# **EXHIBIT D**

Execution Version

MORTGAGE LOAN PURCHASE AGREEMENT

between

FIRST NATIONAL BANK OF NEVADA,

as Seller,

and

J.P. MORGAN MORTGAGE ACQUISITION CORP.,

as Purchaser

June 1, 2007

Fixed and Adjustable Rate Mortgage Loans

USActive ■

# TABLE OF CONTENTS

**Page**

SECTION 1.____Definitions..............................................................................................1
Subsection 1.01_____Definitions...........................................................................1

SECTION 2.____Purchase and Conveyance................................................................18
18

SECTION 3.____Mortgage Loan Schedule. ..............................................................18

SECTION 4.____Purchase Price................................................................................18

SECTION 5.____Examination of Mortgage Files. ....................................................19

SECTION 6.____Delivery of Mortgage Loan Documents. ........................................19
Subsection 6.01_____Possession of Mortgage Files.............................................19
Subsection 6.02_____Books and Records. ...........................................................20
Subsection 6.03_____Delivery of Mortgage Loan Documents. ...........................20

SECTION 7.____Representations, Warranties and Covenants; Remedies for Breach. ...........21
Subsection 7.01_____Representations and Warranties Regarding Individual
Mortgage Loans. ...........................................................21
Subsection 7.02_____Seller Representations.........................................................38
Subsection 7.03_____Remedies for Breach of Representations and Warranties............42
Subsection 7.04_____Covenants of Seller............................................................45
Subsection 7.05_____Servicing of The Mortgage Loans. ....................................47
Subsection 7.06_____Seller Covenants Regarding Transfer of Servicing.  ................47
Subsection 7.07_____Early Payment Default........................................................52
Subsection 7.08_____Purchase Price Protection. .................................................53

SECTION 8.____Closing. ............................................................................................53

SECTION 9.____Closing Documents...........................................................................54

SECTION 10.____Costs; Assignments........................................................................54

SECTION 11.____Notices. ...........................................................................................55

SECTION 12.____Cooperation of Seller with a Reconstitution................................56

SECTION 13.____Compliance with Regulation AB ...................................................58
Subsection 13.01_____Intent of the Parties; Reasonableness.  58
Subsection 13.02_____Information to Be Provided by the Seller...........................58
Subsection 13.03_____Indemnification; Remedies.  ...........................................61
Subsection 13.04_____Additional Representations and Warranties of the Seller.  ...........62

-i-

SECTION 14.    Additional Indemnification by the Seller and Servicer; Third Party Claims...62

SECTION 15.    Severability Clause. ...............................................................................63

SECTION 16.    No Partnership. .......................................................................................63

SECTION 17.    Counterparts. ..........................................................................................63

SECTION 18.    Governing Law. .......................................................................................63

SECTION 19.    Intention of the Parties. ..........................................................................63

SECTION 20.    Waivers. ..................................................................................................64

SECTION 21.    Exhibits. ..................................................................................................64

SECTION 22.    General Interpretive Principles. ..............................................................64

SECTION 23.    Reproduction of Documents. ...................................................................65

SECTION 24.    Amendment. ............................................................................................65

SECTION 25.    Confidentiality. ........................................................................................65

SECTION 26.    Entire Agreement. ...................................................................................65

SECTION 27.    Further Agreements. ...............................................................................65

SECTION 28.    Successors and Assigns. ........................................................................66

SECTION 29.    Non-Solicitation. .....................................................................................66

## EXHIBITS

EXHIBIT 1    FORM OF SELLER'S AND SERVICER'S OFFICER'S CERTIFICATE

EXHIBIT 2    MORTGAGE LOAN DOCUMENTS

EXHIBIT 3    CONTENTS OF EACH MORTGAGE FILE

EXHIBIT 4    [RESERVED]

EXHIBIT 5    [RESERVED]

EXHIBIT 6    FORM OF OPINION OF COUNSEL

EXHIBIT 7    FORM   OF   ASSIGNMENT,   ASSUMPTION   AND   RECOGNITION
AGREEMENT

EXHIBIT 8    TRANSFER INSTRUCTIONS

USActive ████

EXHIBIT 9     ASSIGNMENT AND CONVEYANCE

EXHIBIT 10   SERVICER ACKNOWLEDGMENT

EXHIBIT 11   CO-OP LOAN FILE

EXHIBIT 12   FORM OF RECONSTITUTION AGREEMENT

EXHIBIT 13   LOAN PERFORMANCE INFORMATION

USActive ███████

MORTGAGE LOAN PURCHASE AGREEMENT

THIS MORTGAGE LOAN PURCHASE AGREEMENT (the "Agreement"), dated June 1, 2007, is hereby executed by and between J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, as purchaser (the "Purchaser") and First National Bank of Nevada, a national banking association, as seller (the "Seller").

W I T N E S S E T H:

WHEREAS, from time to time, the Seller desires to sell to the Purchaser, and, from time to time, the Purchaser desires to purchase from the Seller, certain conventional, fixed and adjustable-rate, residential, first-lien or second-lien mortgage loans (the "Mortgage Loans"), and certain fixed and adjustable rate first lien or second-lien Co-op Loans (the "Co-op Loans"), together with the servicing rights associated with such Mortgage Loans, as described herein, and which shall be delivered as whole loans as provided herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule; and

WHEREAS, each of the Co-op Loans is secured by a pledge of shares of stock issued by a Cooperative and the assignment of the appurtenant proprietary lease, all relating to a specified dwelling unit in an apartment building owned by the Cooperative and located in the states indicated on the related Mortgage Loan Schedule, which is annexed to the related Assignment and Conveyance; and

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance, master servicing, servicing and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.   Definitions.

Subsection 1.01    Definitions.

For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below.

Adjustment Date:  As to each ARM Mortgage Loan, the date on which the Mortgage Interest Rate is adjusted in accordance with the terms of the related Mortgage Note.

Agency Transfer:  A Fannie Mae Transfer or a Freddie Mac Transfer.

Agreement:  This Mortgage Loan Purchase Agreement including all exhibits, schedules, amendments and supplements hereto.

USActive ███

ALTA:  The American Land Title Association or any successor in interest thereto.

Appraised Value:  With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by a Qualified Appraiser at the time of origination of the Mortgage Loan, and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan; *provided, however*, that in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by a Qualified Appraiser.

Approved Tax Service Contract Provider:  Any of the following providers: either First American, Fidelity or a third party mutually agreed to by the Servicer and the Purchaser.

ARM Mortgage Loan:  A Mortgage Loan purchased pursuant to this Agreement the Mortgage Interest Rate of which is adjusted from time to time in accordance with the terms of the related Mortgage Note.

Assignment and Conveyance:  The assignment and conveyance of the Mortgage Loans to be purchased on the applicable Closing Date in the form set forth in Exhibit 9 hereto.

Assignment of Mortgage:  An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Bankruptcy Loan:  A Mortgage Loan that is affected by a bankruptcy which has been filed, except for Mortgage Loans for which a Mortgagor has filed a Chapter 7 liquidation and which is otherwise not in default.

Business Day:  Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in the State of New York, Arizona or any state in which the Master Servicer is located are authorized or obligated by law or executive order to be closed.

Closing Date:  With respect to the Mortgage Loans in a Mortgage Loan Package, the Closing Date as specified in the related Terms Letter.

Closing Documents:  The documents required to be delivered on the Closing Date pursuant to Section 9.

CLTA:  The California Land Title Association.

Code:  The Internal Revenue Code of 1986, as amended, or any successor statute thereto.

Combined Loan-to-Value Ratio or CLTV:  With respect to any Mortgage Loan, the sum of the original principal balance of such Mortgage Loan and the outstanding principal balance (or the full amount permissible under the line of credit in the event the subordinate lien is a home equity line of credit) of any related senior or subordinate lien as of the date of origination of the

Mortgage Loan, divided by the Appraised Value of the Mortgaged Property as of the origination date.

Commission:  The United States Securities and Exchange Commission.

Condemnation Proceeds:  All awards, compensation and settlements in respect of a taking (whether permanent or temporary) of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Convertible Mortgage Loan:  A Mortgage Loan that by its terms and subject to certain conditions allows the Mortgagor to convert the adjustable Mortgage Interest Rate thereon to a fixed Mortgage Interest Rate.

Co-op Lease:  With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

Co-op Loan:  A Mortgage Loan that is secured by a first or second lien on and a perfected security interest in Cooperative Shares and the related proprietary lease granting exclusive rights to occupy the related Cooperative Apartment in the building owned by the related Cooperative.

Co-op Stock:  With respect to a Co-op Loan, the single outstanding class of stock, partnership interest or other ownership instrument in the related residential cooperative housing corporation.

Cooperative: The private, non profit cooperative apartment corporation which owns all of the real property that comprises the Project, including the land, separate dwelling units and all common areas.

Cooperative Unit:  With respect to any Co-op Loan, a specific unit in a Project.

Cooperative Shares:  With respect to any Co-op Loan, the shares of stock issued by a Cooperative and allocated to a Cooperative Apartment and represented by a stock certificates.

Credit Grade:  As defined in the Underwriting Guidelines.

Credit Score:  The credit score for each Mortgage Loan shall be the minimum of two credit bureau scores obtained at origination or such other time by the Seller.  If two credit bureau scores are obtained, the Credit Score will be the lower score.  If three credit bureau scores are obtained, the Credit Score will be the middle of the three.  When there is more than one applicant, the lowest of the applicants' Credit Scores will be used.

Customary Servicing Procedures:  With respect to any Mortgage Loan, those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located which are in accordance with accepted mortgage servicing practices of prudent lending institutions.

Custodial Account:  As defined in the Interim Servicing Agreement.

Custodial Account Certification:  A custodial account certification substantially in the form set forth on Exhibit 1 of the Interim Servicing Agreement.

Custodial Agreement:  That certain Custodial Agreement by and between the Purchaser and the Custodian.

Custodian:  J.P.Morgan Chase Bank or its successor thereto.

Cut-off Date:  With respect to the Mortgage Loans in any Mortgage Loan Package, the Cut-off Date specified in the related Terms Letter.

Cut-off Date Principal Balance:  The aggregate Stated Principal Balance of the Mortgage Loans as of the related Cut-off Date which is determined after the application of payments of principal due on or before the related Cut-off Date, to the extent received, and of Principal Prepayments received before the related Cut-off Date.

DBRS: Dominion Bond Rating Service and its successors in interest.

Deleted Mortgage Loan:  A Mortgage Loan replaced or to be replaced with a Substitute Mortgage Loan in accordance with this Agreement.

Depositor:  The depositor, as such term is defined in Regulation AB, with respect to any Securitization Transaction.

Determination Date:  With respect to each Remittance Date, the last day of the month preceding the month in which such Remittance Date occurs.

Due Date:  With respect to each Remittance Date, the first day of the month in which such Remittance Date occurs, which is the day on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Escrow Account:  As defined in the Interim Servicing Agreement.

Escrow Account Certification:  An escrow account certification substantially in the form set forth on Exhibit 2 of the Interim Servicing Agreement.

Escrow Payments:  The amounts constituting ground rents, taxes, assessments, Primary Mortgage Insurance Policy premiums, fire and hazard insurance premiums, flood insurance premiums, condominium charges and other payments as may be required to be escrowed by the Mortgagor with the Mortgagee pursuant to the terms of any Mortgage Note or Mortgage.

Estoppel Letter:  A document certifying, with respect to a Co-op Loan, (i) the appurtenant Co-op Lease will be in full force and effect as of the date of issuance thereof, (ii) the related Co-op Stock was registered in the Mortgagor's name and there has been no notice of any lien upon, pledge of, levy of execution on or disposition of such Co-op Stock, and (iii) the Mortgagor is not in default under the appurtenant Co-op Lease and all charges due have been paid.

-4-

Exchange Act:  The Securities Exchange Act of 1934, as amended.

FAFDS:  First American Flood Data Services or its successor thereto.

Fannie Mae:  Fannie Mae or any successor thereto.

Fannie Mae Guides:  The Fannie Mae Selling Guide and the Fannie Mae Servicing Guide and all amendments or additions thereto.

Fannie Mae Transfer:  As defined in Section 12 hereof.

FARETS:  First American Real Estate Tax Service or its successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

Fidelity Bond:  The fidelity bond required to be obtained by the Servicer pursuant to the Interim Servicing Agreement.

FIRREA:  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended and in effect from time to time.

Fitch Ratings: Fitch, Inc., or any successor in interest.

Foreclosure Loan:  A Mortgage Loan on which (i) a foreclosure has been completed or commenced or which has been forwarded to an attorney to commence foreclosure; or (ii) a deed-in-lieu of foreclosure has been accepted or is pending.

Freddie Mac:  The Federal Home Loan Mortgage Corporation or any successor thereto.

Freddie Mac Transfer:  As defined in Section 12 hereof.

GAAP: Generally accepted accounting principles in effect from time to time in the United States of America and applied on a consistent basis.

Gross Margin:  With respect to each ARM Mortgage Loan, the fixed percentage amount set forth in each related Mortgage Note which is added to the Index on each Adjustment Date in order to determine the related Mortgage Interest Rate for such Mortgage Loan.

High Cost Loan:  A Mortgage Loan classified as (a) a "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (b) a "high cost home," "threshold," "covered," "high risk home", or "predatory" or similar loan under any other applicable state, federal or local law (or a similarly classified loan using different terminology under a law, regulation or ordinance imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees).

HUD:  The United States Department of Housing and Urban Development or any successor thereto.

USActive ███

Index:  With respect to each ARM Mortgage Loan, the index as provided in the related Mortgage Note.

Initial Rate Cap:  As to each ARM Mortgage Loan, the maximum increase or decrease in the Mortgage Interest Rate on the first Adjustment Date as provided in the related Mortgage Note.

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Only Mortgage Loan:  A Mortgage Loan that requires payment of interest for a period of time specified on the related Mortgage Note.  The interest-only period followed by full amortization of the remaining balance for the remaining duration of the loan.

Interim Funder:  With respect to each MERS Designated Mortgage Loan, the Person named on the MERS® System as the interim funder pursuant to the MERS Procedures Manual.

Interim Servicing Agreement: The agreement, dated as of the date hereof, to be entered into by the Purchaser and Seller, providing for the Seller to service the Mortgage Loans for the Interim Period.

Interim Period:  The period between the Closing Date and the related Transfer Date.

Investor:  With respect to each MERS Designated Mortgage Loan, the Person named on the MERS® System as the investor pursuant to the MERS Procedures Manual.

Lender Paid Mortgage Insurance Fee or LPMI Fee: With respect to each Mortgage Loan which has an LPMI Policy, the portion of the Mortgage Interest Rate as set forth on the related Mortgage Loan Schedule (which shall be payable solely from the interest portion of Monthly Payments, Insurance Proceeds, Condemnation Proceeds or Liquidation Proceeds), which, during such period prior to the required cancellation of the LPMI Policy, shall be used to pay the premium due on the related LPMI Policy.

Lender Paid Mortgage Insurance Policy or LPMI Policy:    A policy of primary mortgage guaranty insurance issued by a Qualified Insurer pursuant to which the related premium is to be paid by the Servicer of the related Mortgage Loan from payments of interest made by the Mortgagor in an amount as is set forth in the related Mortgage Loan Schedule.

Lifetime Rate Cap:  As to each ARM Mortgage Loan, the maximum Mortgage Interest Rate which shall be as permitted in accordance with the provisions of the related Mortgage Note.

Liquidation Proceeds:  The proceeds received in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of REO Property, Insurance Proceeds and Condemnation Proceeds.

Litigation Loan:  A Mortgage Loan which is in any stage of litigation (excluding class action litigation where a named plaintiff is not a Mortgagor of a Mortgage Loan included in the

-6-

Servicing Rights), or which is the subject of an injunction or settlement requiring Seller to take action or affecting the origination or servicing of the Mortgage Loan[s], and which has a material adverse effect on the Mortgage Loan or the Servicing Rights associated with such Mortgage Loan.

Loan-to-Value Ratio or LTV:  With respect to any Mortgage Loan as of any date of determination, the ratio, expressed as a percentage, on such date of the outstanding principal balance of the Mortgage Loan, to the Appraised Value of the related Mortgaged Property.

Master Servicer: Any master servicer appointed by the Purchaser in its sole discretion pursuant to Subsection 2.18 of the Interim Servicing Agreement.

MERS:  MERSCORP, Inc., its successors and assigns.

MERS Designated Mortgage Loan:  Mortgage Loans for which (a) the Seller has designated or will designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record, as nominee for the Seller, in accordance with MERS Procedure Manual and (b) the Seller has designated or will designate the Purchaser as the Investor on the MERS® System.

MERS Procedure Manual:  The MERS Procedures Manual, as it may be amended, supplemented or otherwise modified from time to time.

MERS Report:  The report from the MERS System listing MERS Designated Mortgage Loans and other information.

MERS® System:  MERS mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

MIN:  The Mortgage Identification Number for any MERS Designated Mortgage Loan.

MOM Loan: Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

Moody's: Moody's Investors Service, Inc., or any successor in interest.

Monthly Payment:  With respect to any Mortgage Loan, the scheduled payment of principal and interest payable by a Mortgagor under the related Mortgage Note on each Due Date, which such payment may change on any Adjustment Date as provided in the related Mortgage Note and Mortgage.

Mortgage:  (a) With respect to any Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument creating a first or second lien on the Mortgaged Property securing the Mortgage Note, and (b) with respect to a Co-op Loan, the related Security Agreement.

Mortgage File:  (a) With respect to any Mortgage Loan that is not a Co-op Loan, the items listed in Exhibit 3 hereto and, (b) with respect to a Co-op Loan, the items listed in Exhibit

-7-

11 hereto, and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Interest Rate:  With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note, including, but not limited to, the limitations on such interest rate imposed with respect to each ARM Mortgage Loan by the Initial Rate Cap, the Periodic Rate Cap and the Lifetime Rate Cap.

Mortgage Loan:  Each mortgage loan or Co-op Loan sold, assigned and transferred pursuant to this Agreement and identified on the Mortgage Loan Schedule including, without limitation, the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such mortgage loan.

Mortgage Loan Documents:  With respect to any Mortgage Loan or Co-op Loan, the documents listed in Exhibit 2 hereto.

Mortgage Loan Package:  A pool of Mortgage Loans sold to the Purchaser by the Seller on a Closing Date.

Mortgage Loan Schedule:  The schedule of Mortgage Loans to be annexed as Exhibit A of the Assignment and Conveyance on the related Closing Date, setting forth the following information with respect to each Mortgage Loan in the related Mortgage Loan Package:

(1)     the Seller's Mortgage Loan identifying number;

(2)     the Mortgagor's and Co-Mortgagor's (if applicable) name;

(3)     Mortgagor and co-Mortgagor (if applicable) social security number;

(4)     the Mortgagor's and Co-Mortgagor's (if applicable) gender;

(5)     the Mortgagor's and Co-Mortgagor's (if applicable) race;

(6)     the Mortgagor's and the Co-Mortgagor's (if applicable) ethnicity;

(7)     the Mortgagor's and the Co-Mortgagor's (if applicable) date of birth;

(8)     the Mortgagor's and the Co-Mortgagor's (if applicable) age;

(9)     the Mortgagor's and the Co-Mortgagor's (if applicable) monthly debt expense;

(10)    the Mortgagor's and the Co-Mortgagor's (if applicable) housing expense;

(11)    the Mortgagor's and Co-Mortgagor's (if applicable) monthly gross income;

(12)    first time home buyer flag;

USActive ███

(13)    the street address of the Mortgaged Property including the city, state, county, and the zip code;

(14)    a code indicating whether the Mortgaged Property is a single family residence, a 2-4 family dwelling, a PUD, a townhouse or a unit in a high-rise or low-rise condominium project;

(15)    the number of units for all Mortgaged Properties;

(16)    the year the Mortgaged Property was built;

(17)    the number of bedrooms for each unit in the Mortgaged Property;

(18)    [Reserved];

(19)    the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule, and if different, the maturity expressed in the same manner but based on the actual amortization schedule;

(20)    a code indicating whether the loan is an adjustable rate, fixed rate or balloon Mortgage Loan;

(21)    a code indicating whether the loan is a FHA, VA or conventional Mortgage Loan;

(22)    a code indicating the lien status of the Mortgage Loan;

(23)    if the Mortgage Loan is a Second Lien Mortgage Loan, the principal balance of the related first lien at the time of origination of the first lien;

(24)    the LTV at origination;

(25)    the CLTV at origination;

(26)    if the Mortgage Loan is a First Lien Mortgage Loan, and the Mortgaged Property is subject to a second line mortgage loan which is a home equity line of credit, the full amount permissible under the line of credit;

(27)    the appraised value and purchase price, if applicable, of the Mortgaged Property;

(28)    Mortgage Interest Rate at the time of origination;

(29)    the Mortgage Interest Rate as of the Cut-off Date;

(30)    the origination date of the Mortgage Loan;

(31)    the first Due Date of the Mortgage Loan;

(32)    the stated maturity date of the Mortgage Loan;

USActive

(33)   the amount of the Monthly Payment as of the Cut-off Date;

(34)   the amount of the Monthly Payment at the time of origination;

(35)   that portion of the Monthly Payment which is applied to principal and interest;

(36)   that portion of the Monthly Payment which is applied to taxes and insurance;

(37)   the next due date of the Mortgage Loan;

(38)   a twelve month history for the Mortgage Loan and the number of times thirty, sixty, and ninety days delinquent in the past twelve months;

(39)   a code indicating the payment status of the Mortgage Loan (i.e. bankruptcy, foreclosure, REO);

(40)   the original principal amount of the Mortgage Loan;

(41)   the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal actually collected on or before the Cut-off Date;

(42)   the scheduled principal balance of the Mortgage Loan as of the close of business on the Cut-off Date; after deduction of payments of principal due on or before the Cut-off Date, whether or not collected, if applicable;

(43)   the Mortgage Loan purpose;

(44)   the occupancy status of the Mortgaged Property at the time of origination;

(45)   the Mortgagor's and co-Mortgagor's Credit Score;

(46)   a code indicating the mortgage insurance provider and percent of coverage, if applicable;

(47)   the loan documentation type;

(48)   the front-end and back-end debt to income ratio;

(49)   a code indicating whether the Mortgage Loan has a Prepayment Penalty;

(50)   a code indicating the Prepayment Penalty term and the Prepayment Penalty amount of the Mortgage Loan, if any;

(51)   the monthly servicing fee, if provided;

(52)   the tax service contract provider;

(53)   the flood insurance service contract provider;

-10-

(54)   the escrow balance as of the Cut-Off Date;

(55)   MIN, if applicable;

(56)   the Credit Grade;

(57)   the points paid by the Mortgagor at closing;

(58)   a code indicating whether the Mortgage Loan is an Interest Only Mortgage Loan;

(59)   with respect to each Interest Only Mortgage Loan, the duration of the related interest only period expressed in months;

(60)   a code indicating whether the Mortgage Loan is Section 32 mortgage loan or a High Cost Loan; and

(61)   a code indicating the origination channel ( i.e. wholesale, retail or correspondent).

With respect to ARM Mortgage Loans, the Mortgage Loan Schedule shall set forth the following information as of the related Cut-of Date:

(1)   the Index and payment and interest rate adjustment frequencies;

(2)   the initial Adjustment Date;

(3)   the initial payment adjustment date;

(4)   the next Adjustment Date;

(5)   the next payment adjustment date;

(6)   the Gross Margin;

(7)   the minimum Mortgage Interest Rate under the terms of the Mortgage Note;

(8)   the maximum Mortgage Interest Rate under the terms of the Mortgage Note;

(9)   the Mortgage Interest Rate adjustment cap at the initial Interest Rate Adjustment Date;

(10)  the Mortgage Interest Rate adjustment cap at all subsequent Interest Rate Adjustment Dates;

(11)  the Lifetime Mortgage Interest Rate Cap;

(12)  the rounding provisions under the terms of the Mortgage Note;

(13)  the lookback provisions (# of days) under the terms of the Mortgage Note;

-11-

With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date:

(1)     the number of Mortgage Loans;

(2)     the related Cut-off Date Principal Balance;

(3)     the weighted average Mortgage Interest Rate of the Mortgage Loans;

(4)     the weighted average months to maturity of the Mortgage Loans;

(5)     the weighted average Lifetime Rate Cap; and

(6)     the weighted average Gross Margin.

Mortgage Note:  The original executed note or other evidence of the Mortgage Loan indebtedness of a Mortgagor.

Mortgaged Property:  (a) With respect to each Mortgage Loan which is not a Co-op Loan, the Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple interest in a single parcel of real property improved by a Residential Dwelling and (b) with respect to each Co-op Loan, the related Cooperative Apartment.

Mortgagee:  The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor:  The obligor on a Mortgage Note, who is an owner of the Mortgaged Property and the grantor or mortgagor named in the Mortgage and such grantor's or mortgagor's successors in title to the Mortgaged Property.

NAIC:  The National Association of Insurance Commissioners or any successor organization.

Officer's Certificate:  A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, a President or a Vice President or higher officer of the Person on behalf of whom such certificate is being delivered.

Opinion of Counsel:  A written opinion of counsel, who may be an employee of the Seller, reasonably acceptable to the Purchaser.

OTS:  The Office of Thrift Supervision or any successor.

Periodic Rate Cap:  As to each Mortgage Loan, the maximum increase or decrease in the Mortgage Interest Rate, on any Adjustment Date as provided in the related Mortgage Note.

Person:  An individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Premium:  With respect to any Mortgage Loan purchased above par, which is equal to the product of (a) the positive difference between (i) the Purchase Price Percentage and (ii) 100%, times (b) the Stated Principal Balance of such Mortgage Loan at time of repurchase.

Premium Recapture Percentage:  With respect to the repurchase of any Mortgage Loan to be repurchased above par, that percentage determined in accordance with the following:

If repurchase is requested during the indicated month from the Closing Date, the Premium Recapture Percentage will be the following:

| Months | Premium Recapture Percentage |
|---|---|
| 0-6 months, inclusive | 100% of the Premium |
| 7 months | 50% of the Premium |
| 8 months | 41.67% of the Premium |
| 9 months | 33.34% of the Premium |
| 10 months | 25% of the Premium |
| 11 months | 16.67% of the Premium |
| 12 months | 8.34% of the Premium |
| Following month 12 | 0% of the Premium |

Prepayment Penalty:  With respect to each Mortgage Loan, the prepayment penalty, charge, premium or fee, if any, payable upon the prepayment, in whole or in part, of such Mortgage Loan, as set forth in the related Mortgage Note.

Primary Mortgage Insurance Policy or PMI Policy:  A policy of primary mortgage guaranty insurance issued by an insurer acceptable to Fannie Mae or Freddie Mac.

Principal Prepayment:  Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any Prepayment Penalty thereon and that is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Prior Servicer:  Any servicer of a Mortgage Loan prior to the Closing Date.

Project:  All real property owned by the Cooperative including the land, separate dwelling units and all common areas.

Purchase Price:  The price paid on the Closing Date by the Purchaser to the Seller pursuant to this Agreement in exchange for the Mortgage Loans in the related Mortgage Loan Package as set forth in Section 4 hereto.

USActive

Purchase Price Percentage:  That certain purchase price percentage specified in the Terms Letter with respect to the Mortgage Loans, as adjusted as provided therein.

Purchaser:  The Person listed as such in the initial paragraph of this Agreement, together with its successors and assigns as permitted under the terms of this Agreement.

Qualified Appraiser:  An appraiser of a Mortgaged Property duly appointed by the originator of the related Mortgage Loan, who had no interest, direct or indirect, in such Mortgaged Property or in any loan made on the security thereof, whose compensation is not affected by the approval or disapproval of the related Mortgage Loan and who met the qualifications of Fannie Mae or Freddie Mac and satisfied the requirements of Title XI of FIRREA.

Qualified Correspondent:  Any Person from which the Seller purchased Mortgage Loans, provided that the following conditions are satisfied:  (i) such Mortgage Loans were originated pursuant to an agreement between the Seller and such Person that contemplated that such Person would underwrite mortgage loans from time to time, for sale to the Seller, in accordance with underwriting guidelines designated by the Seller ("Designated Guidelines") or guidelines that do not vary materially from such Designated Guidelines; (ii) such Mortgage Loans were in fact underwritten as described in clause (i) above and were acquired by the Seller within 180 days after origination; (iii) either (x) the Designated Guidelines were, at the time such Mortgage Loans were originated, used by the Seller in origination of mortgage loans of the same type as the Mortgage Loans for the Seller's own account or (y) the Designated Guidelines were, at the time such Mortgage Loans were underwritten, designated by the Seller on a consistent basis for use by lenders in originating mortgage loans to be purchased by the Seller; and (iv) the Seller employed, at the time such Mortgage Loans were acquired by the Seller, pre-purchase or post-purchase quality assurance procedures (which may involve, among other things, review of a sample of mortgage loans purchased during a particular time period or through particular channels) designed to ensure that Persons from which it purchased mortgage loans properly applied the underwriting criteria designated by the Seller.

Qualified Insurer: An insurer acceptable to Fannie Mae and Freddie Mac which is rated A-/VIII or better in the current Best's Key Rating Guide ("Best's").

Rating Agency: Any of S&P, Moody's, DBRS or Fitch Ratings.

Reconstitution Agreement: As defined in Section 12 hereof.

Reconstitution Closing Date:  With respect to each Reconstitution, the applicable closing date.

Record Date:  The close of business of the last Business Day of the month preceding the month of the related Remittance Date.

Refinanced Mortgage Loan:  A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

USActive ▮

Regulation AB: Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Remittance Date: The 5th day of any month (or, if such 5th day is not a Business Day, the preceding Business Day).

REO Disposition: The final sale by the Servicer or the Purchaser of an REO Property.

REO Disposition Proceeds: All amounts received with respect to an REO Disposition.

REO Property: A Mortgaged Property acquired by the Servicer through foreclosure or deed in lieu of foreclosure.

Repurchase Price: With respect to any Mortgage Loan, an amount equal to (x) (i) the Stated Principal Balance of the Mortgage Loan subject to repurchase, plus (ii) the product of (A) the Premium, if applicable, and (B) the Premium Recapture Percentage, if applicable,, plus, in each case (y) (i) accrued interest at the Mortgage Interest Rate from and including the Due Date through which interest was last paid by or on behalf of the Mortgagor through the earlier to occur of: (A) the last day of the month in which such repurchase occurs; or (B) the day on which the related foreclosure proceeding is completed and the related Mortgage Property is converted to REO Property, or trustee's sale or similar disposition of, the Mortgaged Property is completed; (ii) all out-of-pocket costs and expenses, including reasonable attorneys fees, incurred by Purchaser to effect the repurchase; (iii) any and all out-of-pocket advances due to a servicer; (iv) any such additional amounts as may be reasonably necessary to assign and transfer such servicing from the Purchaser to the Seller; and (v) any cost and/or damages incurred in connection with any violation of any predatory lending law.

Residential Dwelling: Any one of the following: (i) a detached one-family dwelling, (ii) a detached two-to four-family dwelling, (iii) a one-family dwelling unit in a condominium project or (iv) a one-family dwelling in a planned unit development, none of which is a mobile or manufactured home.

S&P: Standard & Poor's Ratings Service, a division of The McGraw-Hill Companies, Inc.

Second Lien Mortgage Loan: A Mortgage Loan secured by a second lien on the related Mortgaged Property.

Securities Act: The federal Securities Act of 1933, as amended.

Securities Exchange Act: The federal Securities Exchange Act of 1934, as amended.

Securitization Transaction: Any transaction involving either (1) a sale or other transfer of some or all of the Mortgage Loans directly or indirectly to an issuing entity in connection with

-15-

an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities or (2) an issuance of publicly offered or privately placed, rated or unrated securities, the payments on which are determined primarily by reference to one or more portfolios of residential mortgage loans consisting, in whole or in part, of some or all of the Mortgage Loans.

Security Agreement:  With respect to a Co-op Loan, the agreement or mortgage creating a security interest in favor of the originator of the Co-op Loan in the related Co-op Stock.

Seller:  First National Bank of Nevada, a national banking association or the successor in interest to such entity or any successor to the Seller under this Agreement appointed as herein provided.

Seller Information:  As defined in Section 13.03.

Servicer:  First National Bank of Nevada, a national banking association, or its successor in interest or any successor to the Servicer under this Agreement appointed as herein provided.

Servicing Advances:  All customary, reasonable and necessary out-of-pocket costs and expenses incurred in the performance by the Servicer of its servicing obligations, including, but not limited to, the cost of (a) the preservation, restoration and protection of the Mortgaged Property,  (b) any enforcement or judicial proceedings, including foreclosures,  (c) the management and liquidation of the Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage, and (d) payments made by the Servicer with respect to a Mortgaged Property pursuant to Subsection 2.06 of the Interim Servicing Agreement.  The Servicer shall obtain the prior written consent of the Purchaser or its designee prior to making any Servicing Advance of $10,000 or more.

Servicing Fee:  With respect to each Mortgage Loan, the amount of the servicing fee the Purchaser shall pay to the Servicer, which shall, for each month, be equal to Twelve Dollars ($12.00) per Mortgage Loan as of the first day of each month.  Such fee shall be payable monthly and shall be pro rated for any portion of a month during which the Mortgage Loans is serviced pursuant to this Agreement and the Interim Servicing Agreement.  The obligation of the Purchaser to pay the Servicing Fee is limited to, and payable solely from, the interest portion (including recoveries with respect to interest from Liquidation Proceeds and other proceeds, to the extent permitted by Subsection 3.02 of the Interim Servicing Agreement) of related Monthly Payments collected by the Servicer, or as otherwise provided under Subsection 3.02 of the Interim Servicing Agreement.

Servicing File:  With respect to each Mortgage Loan, the file retained by the Servicer consisting of originals of all documents in the Mortgage File which are not delivered to the Purchaser or the Custodian and copies of the Mortgage Loan Documents.

Servicing Rights: Any and all of the following: (a) any and all rights to service the Mortgage Loans; (b) any payments to or monies received by the Seller for servicing the Mortgage Loans; (c) any late fees, penalties or similar payments with respect to the Mortgage Loans; (d) all agreements or documents creating, defining or evidencing any such servicing rights to the extent they relate to such servicing rights and all rights of the Seller thereunder; (e) Escrow Payments or other similar payments with respect to the Mortgage Loans and any

-16-

amounts actually collected by the Seller with respect thereto; (f) all accounts and other rights to payment related to any of the property described in this paragraph; and (g) any and all documents, files, records, servicing files, servicing documents, servicing records, data tapes, computer records, or other information pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans.

Stated Principal Balance: As to each Mortgage Loan as to any date of determination, (i) the unpaid principal balance of the Mortgage Loan at the related Cut-off Date after giving effect to the principal portion of any Monthly Payments actually received on or before such date, whether or not received, as well as any Principal Prepayments received before such date, minus (ii) all amounts previously distributed to the Purchaser with respect to the Mortgage Loan representing payments or recoveries of principal.

Static Pool Information:  Static pool information as described in Item 1105(a)(1)-(3) and 1105(c) of Regulation AB.

Substitute Mortgage Loan:  A mortgage loan substituted by the Seller for a Deleted Mortgage Loan which must, on the date of such substitution, be approved by the Purchaser and (i) have a Stated Principal Balance, after deduction of the principal portion of the Monthly Payment due in the month of substitution, not in excess of, and not materially less than, the Stated Principal Balance of the Deleted Mortgage Loan; (ii) have a Mortgage Interest Rate not less than that of the Deleted Mortgage Loan; (iii) have a Loan-to-Value Ratio not higher than that of the Deleted Mortgage Loan; (iv) have a remaining term to maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan; (v) comply with each representation and warranty set forth in Subsection 7.01; (vi) be current in the payment of principal and interest; (vii) be secured by a Mortgaged Property of the same type and occupancy status as secured the Deleted Mortgage Loan; and (viii) with respect to a Deleted Mortgage Loan which is an ARM Mortgage Loan, have the same Index as the Deleted Mortgage Loan, and (ix) have payment terms that do not vary in any material respect from those of the Deleted Mortgage Loan.

Successor Servicer:  A servicer designated by the Purchaser pursuant to Section 7.06 which is entitled to the benefits of the indemnifications set forth in Sections 7.03 and 14.

Tax Service Contract:  A life of loan, transferable real estate tax service contract.

Terms Letter:  Each terms letter prepared by the Purchaser and executed and delivered by the Seller and the Purchaser from time to  time, which contains certain specific information relating to the sale of each Mortgage Loan Package dated as of the related Closing Date.

Texas Home Equity Loan:  An extension of credit described in Section 50(a)(6), Article XVI of the Texas Constitution.

Third-Party Originator:   Each Person, other than a Qualified Correspondent, that originated Mortgage Loans acquired by the Seller.

USActive ▮▮▮▮

Transfer Date: The date on which the Purchaser, or its designee, shall receive the transfer of servicing responsibilities and begin to perform the servicing of the Mortgage Loans, and the Seller shall cease all servicing responsibilities, as set forth in the related Terms Letter.

Transfer Instructions:  Those mutually agreeable transfer procedures pursuant to which Seller shall effect the transfer of the Servicing to Purchaser, and which are attached hereto as Exhibit 8.

Underwriting Guidelines:  The underwriting guidelines applicable to the Mortgage Loans in a related Mortgage Loan Package attached as an exhibit to the Terms Letter, as the same shall be modified from time to time; provided, that the Seller shall promptly deliver copies of all such modifications to the Purchaser and provided further, that all material modifications thereto shall require the prior notice to the Purchaser.

Whole Loan Transfer:  The sale or transfer by Purchaser of some or all of the Mortgage Loans in a whole loan or participation format pursuant to a Reconstitution Agreement.

SECTION 2.   Purchase and Conveyance.

The Seller, in exchange for the payment of the applicable Purchase Price by the Purchaser on the related Closing Date, hereby sells, transfers, assigns, sets over and conveys to the Purchaser, without recourse, but subject to the terms of this Agreement and each related Terms Letter, all of its rights, title and interest in and to the Mortgage Loans in the related Mortgage Loan Package identified on Exhibit A to each related Assignment and Conveyance Agreement as being sold by it, together with the related Mortgage Files and the Servicing Rights related thereto and all rights and obligations arising under the documents contained therein.

With respect to each Mortgage Loan purchased, the Purchaser shall own and be entitled to receive:  (a) all payments and/or recoveries of principal collected on or after the related Cut-off Date and (b) all payments of interest on the Mortgage Loans net of the Servicing Fee.

SECTION 3.   Mortgage Loan Schedule.

The Seller shall deliver the Mortgage Loan Schedule with respect to a Mortgage Loan Package to the Purchaser at least five (5) Business Days prior to the related Closing Date.

SECTION 4.   Purchase Price.

The Purchase Price for the Mortgage Loans in each Mortgage Loan Package shall be the Purchase Price Percentage multiplied by the Cut-off Date Principal Balance of the Mortgage Loans, plus accrued interest at the Mortgage Interest Rate less the LPMI Fee, if applicable, from the related Cut-off Date through the day immediately prior to the related Closing Date.  Subject to the conditions set forth herein, the Purchaser shall pay the Purchase Price to the Seller by 3:00 p.m. Eastern Time on the related Closing Date.  Such payment shall be made by wire transfer of immediately available funds to the account designated by the Seller.

-18-

In the event that, as of the Closing Date, the Seller has not obtained tax service contracts or flood certification contracts in accordance with the requirements of Section 7.01(xx), the fees and expenses of the Purchaser related to the set up or transfer of tax service contracts  or flood certification contracts shall be deducted by the Purchaser from the Purchase Price for the related Mortgage Loans.

SECTION 5.   Examination of Mortgage Files.

Except as otherwise set forth in the related Terms Letter, in addition to any rights granted to the Purchaser hereunder to underwrite the Mortgage Loans and review the Mortgage Loan Documents prior to the related Closing Date, the Seller shall, prior to the related Closing Date, make the Mortgage Files available to the Purchaser for examination and the Purchaser shall have the right to conduct property inspections, and obtain appraisal recertifications, drive-by appraisals, or brokers price opinions.  Such underwriting by the Purchaser or its designee shall not impair or diminish the rights of the Purchaser or any of its successors under this Agreement with respect to a breach of the representations and warranties contained in this Agreement.  The fact that the Purchaser or its designee has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's or any of its successors' rights to demand repurchase or other relief or remedy as provided for in this Agreement.

SECTION 6.   Delivery of Mortgage Loan Documents.

Subsection 6.01   Possession of Mortgage Files.

The contents of each Mortgage File required to be retained by the Servicer to interim service the Mortgage Loans pursuant to the Interim Servicing Agreement and thus not delivered to the Purchaser or its designee are and shall be held in trust by the Servicer for the benefit of the Purchaser as the owner thereof.  The Servicer's possession of any portion of each such Mortgage File is at the will of the Purchaser for the sole purpose of facilitating servicing of the Mortgage Loans pursuant to this Agreement, and such retention and possession by the Servicer shall be in a custodial capacity only.  The ownership of each Mortgage Note, Mortgage and the contents of each Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Servicer shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Servicer at the will of the Purchaser in such custodial capacity only.  The Mortgage File retained by the Servicer with respect to each Mortgage Loan pursuant to this Agreement shall be appropriately identified in the Servicer's computer system to reflect clearly the ownership of such related Mortgage Loan by the Purchaser.  The Servicer shall release from its custody the contents of any Mortgage File retained by it only in accordance with this Agreement, except when such release is required in connection with a repurchase of any such Mortgage Loan pursuant to Subsection 7.03 of this Agreement or if required under applicable law or court order.  The Servicer shall deliver to the Purchaser copies of any documents in a Mortgage File reasonably requested by the Purchaser within ten (10) days of the date of such request, at the expense of the Purchaser.

-19-

Subsection 6.02   Books and Records.

All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Servicer after the related Cut-off Date on or in connection with a Mortgage Loan as provided in Section 2 shall be vested in the Purchaser; provided, however, that all such funds received on or in connection with a Mortgage Loan as provided in Section 2 shall be received and held by the Servicer in trust for the benefit of the Purchaser as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

As more fully set forth in Section 19, it is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. Consequently, the sale of each Mortgage Loan shall be reflected as a purchase on the Purchaser's business records, tax returns and financial statements, and as a sale of assets on the Seller's business records, tax returns and financial statements.

Subsection 6.03   Delivery of Mortgage Loan Documents.

The Seller shall, at least five (5) Business Days prior to the related Closing Date (or such later date as the Purchaser may reasonably request), deliver and release to the Custodian, the Mortgage Loan Documents with respect to each Mortgage Loan in the related Mortgage Loan Package. To the extent that any such Mortgage Loan Documents have been delivered for recording and have not yet been returned to the Seller by the applicable recording office, the Seller shall, promptly following receipt by it of such Mortgage Loan Documents from the applicable recording office, deliver such documents to the Purchaser or its designee; provided, however, that the original recorded document or a clerk-certified copy thereof shall be delivered to the Purchaser no later than one year following the related Closing Date, subject to the following paragraph.

In the event that such original or copy of any document submitted for recordation to the appropriate public recording office is not so delivered to the Purchaser or its designee within ninety days following the related Closing Date, and in the event that the Seller does not cure such failure within sixty (60) days after receipt of written notification of such failure from the Purchaser, the related Mortgage Loan shall, upon the request of the Purchaser, be repurchased by the Seller at a price and in the manner specified in Subsection 7.03. The foregoing repurchase obligation shall not apply in the event the Seller cannot cause the Servicer to deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office within the specified period due to a delay caused by the recording office in the applicable jurisdiction; provided that the Seller shall cause the Servicer instead to deliver a recording receipt of such recording office or, if such recording receipt is not available, an officer's certificate of a servicing officer of the Servicer, confirming that such document has been accepted for recording and that the Servicer shall immediately deliver such document upon receipt; and, provided further, that if the Seller cannot cause the Servicer to deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office within the specified time for any reason within twelve (12) months after receipt

-20-

of written notification of such failure from the Purchaser, the Seller shall repurchase the related Mortgage Loan at the price and in the manner specified in Subsection 7.03.

To the extent received by it, the Seller shall, or shall cause the Servicer to, promptly forward to the Purchaser, or its designee, original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement.

SECTION 7.   Representations, Warranties and Covenants; Remedies for Breach.

Subsection 7.01   Representations and Warranties Regarding Individual Mortgage Loans.

The Seller, with respect to Mortgage Loans sold by it, hereby represents and warrants to the Purchaser, its successors and assigns and the Successor Servicer, that, as to each Mortgage Loan, as of the related Closing Date (or such other date as specified therein):

(a) Mortgage Loans as Described.   The information set forth in the Mortgage Loan Schedule and the tape delivered by the Seller to the Purchaser is true, correct and complete in all material respects.

(b) No Outstanding Charges.   There are no defaults by the Seller, the Servicer or any prior originator or servicer in complying with the terms of the Mortgage, and (a) all taxes, special assessments, ground rents, governmental assessments, insurance premiums, leasehold payments, water, sewer and municipal charges which previously became due and owing have been paid and (2) all flood and hazard insurance premiums and mortgage insurance premiums which are due, have been paid without loss or penalty to the Mortgagor.  To the Seller's knowledge, as of the Closing Date, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under a Mortgage Loan has occurred, including but not limited to a violation of applicable law, local ordinances or city codes resulting from a deterioration or defect existing in any Mortgaged Property, and neither Seller nor its predecessors have waived any default, breach, violation or event of acceleration.  Seller has received no notice of, and has no knowledge of, any event, including but not limited to the bankruptcy filing or death of a Mortgagor, which may or could give rise to a Mortgagor default under the Note or Mortgage.  None of the Seller, the Servicer, a Prior Servicer or any originator (if not the Seller) has advanced funds, or induced, solicited or knowingly received any advance from any party other than the Mortgagor, directly or indirectly, for the payment of any amount due under the Mortgage Loan.

(c) Original Terms Unmodified.   The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which (a) have been recorded in the applicable public recording office if required by law or if necessary to maintain the lien priority of the Mortgage, and (b) which have been delivered to the Purchaser; the substance of any such waiver, alteration or modification has been approved by the insurer under the Primary Mortgage

-21-

Insurance Policy or LPMI Policy, if any, and by the title insurer, to the extent required by the related policy, and is reflected on the Mortgage Loan Schedule. No other instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the insurer under the Primary Mortgage Insurance Policy or LPMI Policy, if any, and by the title insurer, to the extent required by the policy, and which assumption agreement is a part of the Mortgage File and is reflected on the Mortgage Loan Schedule. As of the Transfer Date, the full original principal amount of each Mortgage Loan has been advanced as provided for in the Mortgage Loan documents, and there is no requirement for any future advances.

(d) <u>No Defenses</u>. The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and the Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated. The Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under, or has been a debtor under, applicable bankruptcy laws.

(e) <u>Hazard Insurance</u>. All buildings or other customarily insured improvements upon the Mortgaged Property are insured by a Qualified Insurer generally acceptable to Fannie Mae and to prudent mortgage lending institutions against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides as well as all additional requirements set forth herein, pursuant to an insurance policy conforming to the requirements of Customary Servicing Procedures and providing coverage in an amount equal to the lesser of (i) the full insurable value of the Mortgaged Property or (ii) the outstanding principal balance owing on the Mortgage Loan. All such insurance policies are in full force and effect and contain a standard mortgagee clause naming the originator of the Mortgage Loan, its successors and assigns as mortgagee and all premiums thereon have been paid. If the Mortgaged Property is in an area identified on a flood hazard map or flood insurance rate map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of Fannie Mae. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor. Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding

-22-

USActive

obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement.  The Seller has not engaged in, and has no knowledge of the Mortgagor, any subservicer or any prior servicer having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either, including, without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller.

(f)  Compliance with Applicable Laws.   Any and all requirements of any applicable federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, predatory and abusive lending laws, equal credit opportunity, fair housing and disclosure laws or unfair and deceptive practices laws applicable to the origination and servicing of the Mortgage Loan including, without limitation, any provisions relating to prepayment penalties, have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations.  Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable predatory and abusive lending laws.

(g)  No Satisfaction of Mortgage.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release.  Neither the Seller nor the Servicer has waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, and neither the Seller nor the Servicer has waived any default.

(h)  Valid First or Second Lien.  Except with respect to each Co-op Loan, the Mortgage is a valid, existing, perfected and enforceable first or second lien on the Mortgaged Property, including all improvements on the Mortgaged Property, free and clear of all adverse claims, liens and encumbrances having priority over the lien of the Mortgage, subject only to (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and either (A) specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan or (B) which do not adversely affect the Appraised Value of the Mortgaged Property, (iii) other matters to which like properties are commonly subject which do not individually or in the aggregate materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property or (iv) with respect to each Second Lien Mortgage Loan a prior mortgage lien on the Mortgaged Property.  Except with respect to each Co-op Loan, any security agreement, chattel mortgage or equivalent document related to and delivered

-23-

in connection with the Mortgage Loan establishes and creates a valid, existing and enforceable (A) first lien and first priority security interest with respect to each first lien Mortgage Loan, or (B) second lien and second priority security interest with respect to each Second Lien Mortgage Loan, in either case, on the property described therein and the Seller has the full right to sell and assign the same to the Purchaser.

(i) Validity of Mortgage Documents.   With respect to each Mortgage Loan, Seller or its designee has in its possession all Servicing Files, or any miscellaneous items (except for those Servicing Files disclosed to Purchaser by Seller as outstanding).  All Servicing Files and miscellaneous items required to be delivered pursuant to this Agreement shall be delivered to Purchaser, within the time frames set forth in this Agreement, and if a Servicing File is delivered in imaged format, such images must be of sufficient quality to be readable and able to be copied.  The Mortgage, the Mortgage Note, and each of the other documents executed in conjunction therewith are genuine, were duly executed by a Mortgagor of legal capacity, and all Mortgage Loan documents have been correctly completed and are valid and legally binding documents.  Neither the operation of any of the terms of any Mortgage or Mortgage Note, nor the exercise of any right thereunder, will render the Mortgage or Mortgage Note unenforceable, in whole or in part, or subject to any right of rescission, setoff, counterclaim or defense, and no such right of rescission, setoff, counterclaim or defense has been asserted with respect thereto. All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties.

(j) Full Disbursement of Proceeds.   The proceeds of the Mortgage Loan have been fully disbursed to or for the account of the Mortgagor and there is no obligation for the Mortgagee to advance additional funds thereunder and any and all requirements as to completion of any on site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.  All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage have been paid, and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage.

(k) Title Insurance.  Except with respect to each Co-op Loan, the Mortgage Loan is covered by an ALTA or CLTA lender's title insurance policy, acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in (h)(i), (ii) and (iii) above, and with respect to each Second Lien Mortgage Loan, clause (h)(iv) above) the Seller, its successors and assigns as to the first or second priority lien of the Mortgage in the original principal amount of the Mortgage Loan and, with respect to ARM Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate or Monthly Payment. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein.

-24-

The Seller and its successors and assigns are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement and will inure to the benefit of the Purchaser and its assigns without any further act.  No claims have been made under such lender's title insurance policy, and the Seller has not done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(l) <u>No Default</u>.  There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and, to the Seller's knowledge, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration, and neither the Seller nor the Servicer has waived any default, breach, violation or event permitting acceleration.  With respect to each Second Lien Mortgage Loan, (i) the prior mortgage is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such prior mortgage or the related mortgage note, (iii) to the Seller's knowledge, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, and either (A) the prior mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the Second Lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the prior mortgage.

(m) <u>No Mechanics' Liens.</u>  There are no mechanics' or similar liens or claims filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage.

(n) <u>Location of Improvements; No Encroachments</u>.  All improvements subject to the Mortgage which were considered in determining the Appraised Value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in Subsection 7.01(k) above and all improvements on the Mortgaged Property comply with all applicable zoning and subdivision laws and ordinances

(o) <u>Origination; Payment Terms</u>.  The Mortgage Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company or other similar institution which is supervised and examined by a federal or state authority.  The Seller and all other parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located.  Principal payments on the Mortgage Loan, other than an Interest

-25-

Only Loan, commenced no more than sixty (60) days after the proceeds of the Mortgage Loan were disbursed. The Mortgage Loans have an original term to maturity of not more than thirty (30) years, with interest payable in arrears on the first day of the month. As to each ARM Mortgage Loan, on each applicable Adjustment Date, the Mortgage Interest Rate will be adjusted to equal the sum of the Index plus the applicable Gross Margin, rounded up or down to the nearest multiple of 0.125%; provided, however, that the Mortgage Interest Rate will not increase or decrease by more than the Initial Rate Cap on the first Adjustment Date or the Periodic Rate Cap on any subsequent Adjustment Date, and will in no event exceed the Lifetime Rate Cap. With respect to each Mortgage Loan other than the Interest Only Mortgage Loans, each Mortgage Note requires a monthly payment which is sufficient (i) during the period prior to the first adjustment to the Mortgage Interest Rate, to amortize the original principal balance fully over the original term thereof and to pay interest at the related Mortgage Interest Rate, and (ii) during the period following each Adjustment Date, to amortize the outstanding principal balance fully as of the first day of such period over the then remaining term of such Mortgage Note and to pay interest at the related Mortgage Interest Rate. With respect to each Mortgage Loan identified on the Mortgage Loan Schedule as an Interest-Only Mortgage Loan, the interest-only period shall not exceed ten (10) years (or such other period specified on the Mortgage Loan Schedule) and following the expiration of such interest-only period, the remaining Monthly Payments shall be sufficient to fully amortize the original principal balance over the remaining term of the Mortgage Loan. The Mortgage Note does not permit negative amortization. Each Note is payable in monthly installments of principal and interest, with interest calculated and payable in arrears. The Monthly Payments are sufficient to amortize the Mortgage Loan fully by the maturity date stated in the Note, over a remaining term of not more than forty (40) years, within a tolerance of one hundred dollars ($100). Purchaser shall be entitled to the remedies set out in this Agreement for breach of representation or warranty as if the forgoing representation and warranty shall have been given without any reference to a tolerance. Interest on each Mortgage Loan is calculated and payable in arrears. No Mortgage Loan is a Convertible Mortgage Loan. None of the Mortgage Loans are simple interest Mortgage Loans.

(p) <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>. As of the related Closing Date, there are no uninsured casualty losses or casualty losses where coinsurance has been, or Seller has reason to believe will be, claimed by the insurance company or where the loss, exclusive of contents, is, or will be, greater than the recovery (less actual costs and expenses incurred in connection with such recovery) from the insurance carrier. No casualty insurance proceeds have been used to reduce Mortgage Loan balances or for any other purpose except to make repairs to the Mortgaged Property, except as allowed pursuant to applicable law and the Mortgage Loan documents. All damage with respect to which casualty insurance proceeds have been received by or through Seller has been properly repaired or is in the process of being repaired using such proceeds. As of the related Closing Date, there is no damage to the Mortgaged Property from waste, fire, windstorm, flood, tornado, earthquake or earth movement, hazardous or toxic substances, other casualty, or any other property related circumstances or conditions that would adversely affect the value or marketability of any Mortgage Loan or Mortgaged Property, and adequate insurance is in place to cover all

-26-

such events.  As of the related Closing  Date, there is no proceeding pending or, to Seller's knowledge, threatened for the partial or total condemnation of the Mortgaged Property that would adversely affect the Mortgage Loan, except as disclosed in writing to Purchaser.

(q) <u>Customary Provisions</u>.  The Mortgage and related Mortgage Note contain enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust by trustee's sale, and (ii) otherwise by judicial foreclosure.  There is no homestead or other exemption or other right available to the Mortgagor or any other person,  or restriction on the Seller or any other person, including without limitation, any federal, state or local, law, ordinance, decree, regulation, guidance, attorney general action, or other pronouncement, whether temporary or permanent in nature, that would interfere with, restrict or delay, either (y) the ability of the Seller, Purchaser or any servicer or any successor servicer to sell the related Mortgaged Property at a trustee's sale or otherwise, or (z) the ability of the Seller, Purchaser or any servicer or any successor servicer to foreclose on the related Mortgage. The Mortgage Note and Mortgage are on forms acceptable to Fannie Mae or Freddie Mac.

(r) <u>No Additional Collateral</u>.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property.

(s) <u>Appraisal</u>.  The Mortgage File contains an appraisal of the related Mortgaged Property, in a form acceptable to Fannie Mae or Freddie Mac and such appraisal complies with the requirements of FIRREA, and was made and signed, prior to the approval of the Mortgage Loan application, by a Qualified Appraiser.

(t) <u>Deeds of Trust</u>.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(u) <u>No Buydown Provisions; No Graduated Payments or Contingent Interests</u> The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation, or other contingent interest feature, nor does it contain any "buydown" provision which is currently in effect wherein Monthly Payments are paid or partially paid with funds deposited in a separate account established by Seller, the Mortgagor or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor.  No Mortgage Loan is a balloon mortgage loan that has an original stated maturity of less than seven (7) years. As of the related Closing Date, none of the Mortgage Loans are the subject of nonstandard escrow arrangements.

(v) <u>Disclosure and Rescission Materials</u>.   The Mortgagor has received all disclosure materials required by applicable law with respect to the making of mortgage

-27-

USActive ▮▮▮▮▮

loans of the same type as the Mortgage Loan and rescission materials required by applicable law if the Mortgage Loan is a Refinanced Mortgage Loan and has acknowledged receipt of such materials to the extent required by applicable law and such documents will remain in the Mortgage File.

(w) LTV, PMI Policy. In the event the Mortgage Loan had an LTV greater than 80.0% at origination, (i) the excess of the principal balance of the Mortgage Loan over 75.0% of the Appraised Value of the Mortgaged Property with respect to a Refinanced Mortgage Loan, or (ii) the lesser of the Appraised Value or the purchase price of the Mortgaged Property with respect to a purchase money Mortgage Loan, was insured as to payment defaults by a Primary Mortgage Insurance Policy issued by a Qualified Insurer; except that where either (i) or (ii) was impermissible at origination under applicable law, such Mortgage Loan was originated in compliance with applicable law. Unless the PMI Policy for a Mortgage Loan was cancelled at the request of the Mortgagor or automatically terminated, in either case in accordance with applicable law, all premiums have been paid and all provisions of such PMI Policy have been and are being complied with. With respect to a purchase money Mortgage Loan, both the original appraised value and the purchase price are accurately depicted as such on Seller's (or, as applicable, Seller's servicer's) servicing system and are being transmitted, either electronically or via tape-to-tape, to Purchaser's servicing system. Where a Mortgage Loan was closed as a streamlined refinance and a new appraisal was not required, the prior appraised value that was relied on in making the credit decision for the Mortgage Loan is accurately depicted on Seller's (or, as applicable, Seller's servicer's) servicing system and is being transmitted, either electronically or via tape-to-tape, to Purchaser's servicing system. The Mortgage Interest Rate for the Mortgage Loan as set forth on the Mortgage Loan Schedule is net of any such insurance premium. As of the date of origination, no Mortgage Loan had an LTV greater than 95%. As of the date of origination, no Mortgage Loan had a CLTV greater than 97%.

(x) Occupancy of the Mortgaged Property. As of the related Closing Date, the Mortgaged Property was lawfully occupied under applicable law. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities and no improvement located on or part of the Mortgaged Property is in violation of any zoning law or regulation. The Mortgaged Property meets the requirement of either owner occupied or non-owner occupied property.

(y) Transfer of Mortgage Loans. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located (except with respect to each MERS Designated Mortgage Loan). Each original Mortgage was recorded and, except for those Mortgage Loans subject to the MERS identification system, all subsequent assignments of the original Mortgage (other than the assignment to the Purchaser) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of the Seller, or is in the process of being recorded. On or prior to the related Closing Date, Seller has provided the Custodian and the Purchaser with a MERS

-28-

Report listing the Purchaser as the Investor with respect to each MERS Designated Mortgage Loan. With respect to each MERS Designated Mortgage Loan, the Seller has designated the Purchaser as the Investor and no Person is listed as Interim Funder on the MERS® System;

(z) Delinquency. All payments required to be made prior to the Closing Date for such Mortgage Loan under the terms of the Mortgage Note have been made, the Mortgage Loan has not been dishonored, and no Mortgage Loan has been thirty (30) days or more delinquent since the related origination date.

(aa)    Mortgage File. With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File except for the documents which have been delivered to the Purchaser or the Custodian or which have been submitted for recording and not yet returned.

(bb)    Ownership. Immediately prior to the payment of the Purchase Price, the Seller was the sole owner and holder of the Mortgage Loans and the indebtedness evidenced by the Mortgage Note. The Mortgage Loans, including the Mortgage Note and the Mortgage, were not assigned or pledged by the Seller and the Seller had good and marketable title thereto, and the Seller had full right to transfer and sell the Mortgage Loans to the Purchaser free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans. Following the sale of the Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest. The Seller intends to relinquish all rights to monitor, possess and control the Mortgage Loan except in connection with the servicing of the Mortgage Loan by the Servicer as set forth in this Agreement. After the related Closing Date, neither the Seller nor the Servicer will have any right to modify or alter the terms of the sale of the Mortgage Loan and neither the Seller nor the Servicer will have any obligation or right to repurchase the Mortgage Loan, except as provided in this Agreement or as otherwise agreed to by the Seller, the Servicer and the Purchaser.

(cc)    Consolidation of Future Advances. Any future advances made prior to the related Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first or second lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae and Freddie Mac. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

(dd)    Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time of origination. No representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used.

(ee)   <u>Location and Type of Mortgaged Property</u>.  The Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit, or an individual unit in a planned unit development; provided, however, that any condominium project or planned unit development generally conforms with the Underwriting Guidelines regarding such dwellings, and no residence or dwelling is a mobile home, manufactured dwelling or a mixed-use property.  If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project conforms to the Underwriting Guidelines.  As of the date of origination, no portion of the Mortgaged Property was used for commercial purposes, and since the date of origination, no portion of the Mortgaged Property has been used for commercial purposes; provided, that Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes.

(ff)   <u>Adverse Selection</u>.  The Seller used no adverse selection procedures in selecting the Mortgage Loan from among the outstanding first-lien or second-lien, residential mortgage loans owned by it which were available for inclusion in the Mortgage Loans.

(gg)   [Reserved].

(hh)   <u>No Fraud</u>.  No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to the Mortgage Loan has taken place on the part of the Seller, the Servicer or any originator or servicer or the Mortgagor and no fraud or misrepresentation has taken place on the part of any other party involved in the origination of the Mortgage Loan, including without limitation any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan.  The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

(ii)  <u>Origination Practices</u>.  The origination practices used by the Seller and the collection and servicing practices used by the Servicer with respect to each Mortgage Loan have been in all respects legal and customary in the mortgage origination and servicing industry and the collection and servicing practices used by the Servicer have been consistent with Customary Servicing Procedures.  There has been no improper act or omission or error by the Seller or any employee, agent or representative acting on Seller's behalf, with respect to the origination or servicing of the Mortgage Loan.

-30-

(jj) <u>Unacceptable Investment</u>.   Neither the Seller nor the Servicer have any knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause the Mortgage Loan to become delinquent.

(kk)   <u>Servicemember's Civil Relief Act</u>.   The Mortgagor has not notified the Seller or the Servicer, and neither the Seller nor the Servicer has knowledge of any relief requested or allowed to the Mortgagor under the Servicemember's' Civil Relief Act, as amended, or other similar state or federal law.

(ll) <u>No Construction Loans</u>.   No Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgaged Property or (ii) except with respect to 1031-exchange mortgage loans as permitted in the Underwriting Guidelines, facilitating the trade-in or exchange of a Mortgaged Property.

(mm)   <u>Environmental Matters</u>.   There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller or the Servicer is aware in which compliance with any environmental law, rule or regulation is an issue and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property.   The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation.

(nn)        <u>Insurance</u>.   All required insurance policies, of whatever type, remain in full force and effect.   Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage validity or binding effect of any such policies.   No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy, PMI Policy, LPMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage.   In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or the Servicer or any designee of the Seller or the Servicer or any corporation in which the Seller, the Servicer or any officer, director, or employee of the Seller or the Servicer had a financial interest at the time of placement of such insurance.

(oo)        <u>Ground Leases</u>.   With respect to any ground lease to which a Mortgaged Property may be subject:  (A) the Mortgagor is the owner of a valid and subsisting leasehold interest under such ground lease; (B) such ground lease is in full force and effect, unmodified and not supplemented by any writing or otherwise; (C) all rent, additional rent and other charges reserved therein have been fully paid to the extent payable as of the Closing Date; (D) the Mortgagor enjoys the quiet and peaceful possession of the leasehold estate; (E) the Mortgagor is not in default under any of the terms of such ground lease, and there are no circumstances which, with the passage of time or the giving of notice, or both, would result in a default under such ground lease; (F) the lessor under such ground lease is not in default under any of the terms or provisions of such ground lease on the part of the lessor to be observed or performed;

-31-

(G) the lessor under such ground lease has satisfied any repair or construction obligations due as of the Closing Date pursuant to the terms of such ground lease; (H) the execution, delivery and performance of the Mortgage do not require the consent (other than those consents which have been obtained and are in full force and effect) under, and will not contravene any provision of or cause a default under, such ground lease; and (I) the term of such lease does not terminate earlier than the maturity date of the Mortgage Note.

(pp)   Escrow Payments.  With respect to escrow deposits and payments that the Servicer is entitled to collect (other than with respect to Second Lien Mortgage Loans for which the mortgagee under the prior mortgage lien is collecting Escrow Payments), all such payments are in the possession of, or under the control of the Servicer, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All escrow payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage.  As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable.   No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

(qq)   Interest on Escrows.  As of the related Closing Date, Seller has credited to the account of Mortgagors under the Mortgage Loans all interest required to be paid by applicable law or by the terms of the related Mortgage Note on any escrow account. Evidence of such credit shall be provided to Purchaser upon request.

(rr) Escrow Analysis.  Seller has properly conducted an escrow analysis for each escrowed Mortgage Loan in accordance with applicable law.  All books and records with respect to each Mortgage Loan comply with applicable law and regulations, and have been adjusted to reflect the results of the escrow analyses.  Except as allowed by applicable law, there is no inflation factor used in the escrow analysis. Seller has delivered notification to the Mortgagor(s) under each Mortgage Loan of all adjustments resulting from such escrow analyses.

(ss) Completion Escrows.  There are no Mortgage Loans subject to outstanding completion escrows except those specifically identified by Seller as such to Purchaser.

(tt) Anti-Money Laundering Laws.  The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001, the Bank Secrecy Act and the regulations of the Office of Foreign Asset Control (collectively, the "Anti-Money Laundering Laws"); the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws. No Mortgage Loan is subject to nullification pursuant to

-32-

Executive Order 13224 (the "Executive Order") or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations") or in violation of the Executive Order or the OFAC Regulations, and no Mortgagor is subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a "blocked person" for purposes of the OFAC Regulations.

(uu)    Due on Sale.  The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property or Cooperative Shares are sold or transferred without the prior written consent of the Mortgagee thereunder.

(vv)    Interest Rate Adjustments.  With respect to each ARM Mortgage Loan, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note.  Any interest required to be paid pursuant to state and local law has been properly paid and credited.  The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. The Seller shall maintain such statement in the Mortgage File.  The conversion features of any ARM Mortgage Loans which are convertible to fixed rate Mortgage Loans are reasonable and customary.

(ww)    Regarding the Mortgagor.  The Mortgagor is one or more natural persons and/or trustees for an Illinois land trust or a trustee under a "living trust" and such "living trust" is in compliance with Fannie Mae guidelines for such trusts.  Either the Mortgagor is a natural person or the related co-borrower or guarantor is a natural person.

(xx)    Tax Service Contract; Flood Certification Contract.   The Seller has obtained a Tax Service Contract with FARETS on each Mortgage Loan and such contract is assignable to the Purchaser.  The Seller has obtained a life of loan, transferable flood certification contract from FAFDS for each Mortgage Loan and such contract is assignable to the Purchaser or the Purchaser's designee.

(yy)    Prepayment Penalties.  With respect to any Mortgage Loan that contains a provision permitting imposition of a penalty upon a prepayment prior to maturity: (i) the Mortgage Loan provides some benefit to the Mortgagor (e.g., a rate or fee reduction) in exchange for accepting such Prepayment Penalty, (ii) the Mortgage Loan's originator had a written policy of offering the Mortgagor or requiring third-party brokers to offer the Mortgagor, the option of obtaining a mortgage loan that did not require payment of such a penalty, (iii) the Prepayment Penalty was adequately disclosed to the Mortgagor in the mortgage loan documents pursuant to applicable state, local and federal law, and (iv) notwithstanding any state or federal law to the contrary, the Servicer shall not impose such prepayment premium in any instance when the mortgage debt is accelerated as the result of the Mortgagor's default in making the loan payments.  No such Prepayment Penalty may provide for a term in excess of five (5) years following origination.

(zz)    Georgia Fair Lending Act.  There is no Mortgage Loan that was originated on or after October 1, 2002 and on or prior to March 7, 2003, which is secured by

property located in the State of Georgia. There is no Mortgage Loan that was originated after March 7, 2003, which is a "high-cost home loan" as defined under the Georgia Fair Lending Act.

(aaa)   <u>Mortgaged Property Located in New York State</u>.   There is no Mortgage Loan secured by Mortgaged Property located in the State of New York (1) with an original principal balance of $300,000 or less, (2) has an application date on or after April 1, 2003 and (3) the terms of such loan equal or exceed either the APR or the points and fees threshold for "high-cost home loans," as defined in Section 6-L of the New York State Banking Law.

(bbb)   <u>Credit Reporting</u>.   The Seller has caused to be fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its borrower credit files to Equifax, Experian, and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis.

(ccc)   <u>Arbitration</u>.   No Mortgagor agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

(ddd)   <u>Tax Identification/Back Up Withholding</u>.   All tax identifications for individual Mortgagors, have been certified as required by law. Seller has complied with all IRS requirements regarding the obtainment and solicitation of taxpayer identification numbers and the taxpayer identification numbers provided to Purchaser as reflected on the system are correct. To the extent a Mortgage Loan is on back up withholding, Seller has substantiated both the initial reason for the back up withholding and the amount of such back up withholding and the reason for such back up withholding in the amount currently withheld still exists.

(eee)   <u>IRS Forms</u>.   All IRS forms, including, but not limited to, Forms 1099 and 1098, as appropriate, which are required to be filed with respect to the servicing of the Mortgage Loans for activity occurring on or before the applicable year end have been filed or will be filed in accordance with applicable law.

(fff)   <u>Optional Insurance</u>.   All Mortgage Loans for which mortgage/credit life, accidental death, disability, unemployment, or any similar insurance is collected as part of the Mortgagor's monthly payment are identified in the Mortgage File and fully comply with applicable law. None of the Mortgage Loans has a single payment credit life insurance or other optional insurance product that has been considered "predatory" by an Fannie Mae or Freddie Mac. Any Mortgage Loan involved with any type of optional insurance has been properly serviced including, without limitation, the proper application and collection of premiums, the maintenance of complete and accurate records, processing and payment of claims and the handling of correspondence. None of the Mortgage Loans has an optional insurance product that, as of the Closing Date, is being provided free of charge to a Mortgagor.

USActive ▮▮▮▮

(ggg)   Electronic Drafting of Payments.  Concerning Mortgage Loans for which Seller drafts Monthly Payments electronically from the Mortgagor's bank account, such drafting occurs in compliance with applicable law, and the applicable agreement with the Mortgagor; and such applicable agreement with the Mortgagor both legally and contractually can be, and will be fully assigned to Purchaser pursuant to the assignment provisions contained therein.

(hhh)   Construction Defects.  Any home or other improvement included within the Mortgaged Property was constructed in a workmanlike manner, and was accepted by the original homeowner or Mortgagor in good and habitable condition and working order, and conforms with all warranties, express or implied, representations, legal obligations, and local, state and federal requirements and codes concerning the condition, construction, and placement of the home or improvement.

(iii)   Third Party Lenders and Third Party Loans.  Seller shall be deemed to have made all of the representations and warranties contained herein on behalf of each any third party originator and with respect to each loan originated by a third party as though the Seller were the originator thereof.

(jjj)Predatory Lending Regulations.  None of the Mortgage Loans are High Cost Loans.  No Mortgage Loan has an "annual percentage rate" or total "points  and fees" payable by the related Mortgagor (as each such term is calculated under HOEPA) that exceed the thresholds set forth by HOEPA and its implementing regulations, including 12 C.F.R. § 226.32(a)(1)(i). No predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Mortgage Loan.

(kkk)   Single Premium Credit Life Insurance.  No Mortgagor was required to purchase any single premium credit insurance policy (e.g., life, mortgage, disability, accident, unemployment, or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.  No Mortgagor obtained a prepaid single-premium credit insurance policy (e.g., life, mortgage, disability, accident, unemployment, or health insurance product) in connection with the origination of the Mortgage Loan. No proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Mortgage Loan.

(lll)   [Reserved].

(mmm)   Arkansas High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the Arkansas Home Loan Protection Act effective July 16, 2003 (Act 1340 of 2003).

(nnn)   Kentucky High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the Kentucky high-cost home loan statute effective June 24, 2003 (Ky. Rev. Stat. Section 360.100).

USActive

(ooo)   New Jersey High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.).

(ppp)   New Mexico High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. §§ 58-21A-1 et seq.).

(qqq)   Illinois High-Risk Home Loan.  No Mortgage Loan is a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.).

(rrr)   Massachusetts High-Cost Home Mortgage Loan.  No Mortgage Loan is a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act, effective November 7, 2004 (Mass. Ann. Laws Ch. 183C).

(sss)   Indiana High Cost Home Loan.  No Mortgage Loan is a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act, effective January 1, 2005 (Ind. Code Ann. Sections 24-9-1 through 24-9-9).

(ttt)   Higher Cost Products.  The Mortgagor was not encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into account such facts as, without limitation, the Mortgage Loan's requirements and the Mortgagor's credit history, income, assets and liabilities and debt-to-income ratios for a lower-cost credit product then offered by the Mortgage Loan's originator or any affiliate of the Mortgage Loan's originator.  If, at the time of loan application, the Mortgagor may have qualified for a lower-cost credit product then offered by any mortgage lending affiliate of the Mortgage Loan's originator, the Mortgage Loan's originator referred the Mortgagor's application to such affiliate for underwriting consideration.  For a Mortgagor who seeks financing through a Mortgage Loan originator's higher-priced subprime lending channel, the Mortgagor was directed towards or offered the Mortgage Loan originator's standard mortgage line if the Mortgagor was able to qualify for one of the standard products.

(uuu)   Underwriting Methodology.  The methodology used in underwriting the extension of credit for each Mortgage Loan does not rely solely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such extension of credit.  The methodology employed objective related criteria such as the Mortgagor's income, assets and liabilities and/or credit history to the proposed mortgage payment and, based on such methodology, the Mortgage Loan's originator made a reasonable determination that at the time of origination the Mortgagor had the ability to make timely payments on the Mortgage Loan.

(vvv)   Points and Fees. No Mortgagor was charged "points and fees" (whether or not financed) in an amount greater than (i) $1,000, or (ii) 5% of the principal amount of such Mortgage Loan, whichever is greater.  For purposes of this representation, such 5%

-36-

limitation is calculated in accordance with Fannie Mae's anti-predatory lending requirements as set forth in the Fannie Mae Guides and "points and fees" (x) include origination, underwriting, broker and finder fees and charges that the mortgagee imposed as a condition of making the Mortgage Loan, whether they are paid to the mortgagee or a third party, and (y) exclude bona fide discount points, fees paid for actual services rendered in connection with the origination of the Mortgage Loan (such as attorneys' fees, notaries fees and fees paid for property appraisals, credit reports, surveys, title examinations and extracts, flood and tax certifications, and home inspections), the cost of mortgage insurance or credit-risk price adjustments, the costs of title, hazard, and flood insurance policies, state and local transfer taxes or fees, escrow deposits for the future payment of taxes and insurance premiums, and other miscellaneous fees and charges which miscellaneous fee and charges, in total, do not exceed 0.25% of the principal amount of such Mortgage Loan.  All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Mortgage Loan has been disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation.

(www) Second Lien Mortgage Loan. With respect to each Mortgage Loan which is a Second Lien Mortgage Loan.

(i)     the related first lien does not permit negative amortization and (ii) either no consent for the Mortgage Loan is required by the holder of the first lien or such consent has been obtained and is contained in the Mortgage File.

(ii)     Where required or customary in the jurisdiction in which the Mortgaged Property is located, the original lender has filed for record a request for notice of any action by the related senior lienholder, and the Seller has notified such senior lienholder in writing of the existence of the Second Lien Mortgage Loan and requested notification of any action to be taken against the Mortgagor by such senior lienholder;

(iii)     To the Seller's knowledge, the related first lien loan is in full force and effect, and there is no default lien, breach, violation or event which would permit acceleration existing under such first lien mortgage or mortgage note, and, to Seller's knowledge, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration under such first lien loan; and

(iv)     The related first lien mortgage contains a provision which provides for giving notice of default or breach to the mortgagee under the Mortgage Loan and allows such mortgagee to cure any default under the related first lien mortgage.

(xxx)     Valid Co-op Loan Lien.  With respect to each Co-op Loan, the related Mortgage is a valid, enforceable and subsisting first or second security interest on the related Cooperative Shares securing the related cooperative note, subject only to (a) liens of the Cooperative for unpaid assessments representing the Mortgagor's pro rata share of the Cooperative's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like

-37-

collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement. There are no liens against or security interest in the Cooperative Shares relating to each Co-op Loan (except for unpaid maintenance, assessments and other amounts owed to the related cooperative which individually or in the aggregate will not have a material adverse effect on such Co-op Loan), which have priority over the Seller's security interest in such Cooperative Shares.

(yyy)    Filing Search. With respect to each Co-op Loan, a search for filings of financing statements has been made by a company competent to make the same, which company is acceptable to Fannie Mae and qualified to do business in the jurisdiction where the cooperative unit is located, and such search has not found anything which would materially and adversely affect the Co-op Loan.

(zzz)    Co-op Compliance with all Laws. With respect to each Co-op Loan, the related cooperative that owns title to the related Cooperative Apartment building is a "cooperative housing corporation" within the meaning of Section 216 of the Code, and is in material compliance with applicable federal, state and local laws which, if not complied with, could have a material adverse effect on the Mortgaged Property.

(aaaa)    Pledging. With respect to each Co-op Loan, there is no prohibition against pledging the shares of the Cooperative or assigning the Co-op Lease.

(bbbb)    Texas Home Equity Loans. With respect to any Mortgage Loan which is a Texas Home Equity Loan, any and all requirements of Section 50, Article XVI of the Texas Constitution applicable to Texas Home Equity Loans which were in effect at the time of the origination of the Mortgage Loan have been complied with.

Subsection 7.02    Seller Representations.

The Seller hereby represents and warrants to the Purchaser, its successors and assigns and the Successor Servicer that, as to itself as of each Closing Date and as of the Reconstitution Closing Date of each Securitization Transaction:

(a) Due Organization and Authority. It is a national banking association duly organized, validly existing, and in good standing under the laws of the United States and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by it. It is an approved seller/servicer in good standing of conventional residential mortgage loans for Fannie Mae or Freddie Mac and is a HUD-approved mortgagee under Section 203 of the National Housing Act. It has corporate power and authority and capacity to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by it and the consummation of the transactions contemplated hereby have been duly and validly authorized. This Agreement evidences the legal, valid, binding and enforceable

USActive ████

obligation of it, subject to applicable law except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law.   All requisite corporate action has been taken by it to make this Agreement valid and binding upon it in accordance with the terms of this Agreement.

(b) <u>No Consent Required</u>.   No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over it or, if required, such consent, approval, authorization or order has been or will, prior to the related Closing Date (or Reconstitution Closing Date, if applicable), be obtained.

(c) <u>No Conflicts</u>.   The consummation of the transactions contemplated by this Agreement are in its ordinary course of business and will not result in the breach of any term or provision of its charter or by-laws or result in the breach of any term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under, any agreement, indenture or loan or credit agreement or other instrument to which it or its property is subject, or result in the violation of any law, rule, regulation, order, judgment or decree to which it or its property is subject.

(d) <u>Ordinary Course of Business</u>.   Its transfer, assignment and conveyance of the Mortgage Notes and the Mortgages pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction.

(e) <u>No Litigation Pending</u>.   There is no action, suit, proceeding or investigation pending or, to its best knowledge, threatened against it which, either individually or in the aggregate, would result in any material adverse change in its business, operations, financial condition, properties or assets, or in any material impairment of its right or ability to carry on its business substantially as now conducted or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with its obligations contemplated herein, or which would materially impair its ability to perform under the terms of this Agreement.

(f) <u>Ownership</u>.   Immediately prior to the sale of each Mortgage Loan to Purchaser, Seller is the sole owner thereof, free and clear of any lien, claim or encumbrance.   Seller has not sold, assigned, transferred, pledged or hypothecated any interest in any Mortgage Loan (including, without limitation, any interest in the Servicing Rights) to any person other than Purchaser. Upon the sale of such Mortgage Loan (including, without limitation, all interest in the Servicing Rights) to Purchaser, Purchaser will be the sole owner thereof, free and clear of any lien, claim or encumbrance immediately prior to the sale of such Mortgage Loan to Purchaser, the Seller was the sole owner of such Mortgage Loan and had good and marketable title thereto, free and clear of all liens, in each case except for liens to be released simultaneously with the sale to the Purchaser hereunder. As of the related Closing Date, Seller is the lawful owner of the Servicing Rights, has the sole right and authority, to transfer the Servicing Rights as

USActive ████

contemplated hereby, and is not contractually obligated to sell the Servicing Rights to any other party.  The transfer, sale and delivery of the Servicing in accordance with the terms and conditions of this Agreement shall vest in Purchaser or its designee all rights as servicer free and clear of any and all claims, charges, defenses, offsets and encumbrances, including but not limited to those of Seller.

(g) Ability to Perform.  It does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.  It is solvent and the sale of the Mortgage Loans will not cause it to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of its creditors.

(h) Sale Treatment.  It has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for accounting and tax purposes.

(i) No Brokers' Fees.  It has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans.

(j) Fair Consideration.  The consideration received by it upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

(k) Insured Depository Institution Representations.  If it is an "insured depository institution" as that term is defined in Section 1813(c)(2) of Title 12 of the United States Code, as amended, and accordingly, it makes the following additional representations and warranties:

(1) This Agreement conforms to all applicable statutory and regulatory requirements; and

(2) This Agreement is (1) executed contemporaneously with the agreement reached by Purchaser and it, (2) approved by a specific corporate or banking association resolution by its board of directors, which approval shall be reflected in the minutes of said board, and (3) an official record of it.  A copy of such resolution, certified by a vice president or higher officer of it has been provided to Purchaser.

(l) MERS.  It is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Designated Mortgage Loans for as long as such Mortgage Loans are registered with MERS.

(m) No Untrue Information.  Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading, which

would likely have a material adverse effect upon the business, operations, assets or financial condition of Seller or which would likely draw into question the validity of this Agreement or which would likely impair the ability of Seller to perform its obligations under this Agreement.

(n) No Fraud.  The Agreement and any other document contemplated hereby and the purchase has not been entered into fraudulently by Seller, or with the intent to hinder, delay or defraud any creditor or Purchaser.

(o) Title to the Related Escrow Accounts.  As of the related Closing Date, Seller is and shall remain, until such Transfer Date, the custodian of the related Escrow Accounts.  Neither Seller nor any Prior Servicer of the Mortgage Loans has entered into a settlement agreement with any party or with any state attorney general relative to the handling of tax and insurance escrows which would be binding on Purchaser or would otherwise result in Purchaser's having to change the escrow cushion requirements for any of the Mortgage Loans after the related Closing Date.

(p) Related Escrow Account Maintenance.  All related Escrow Accounts are being maintained in accordance with applicable law, and the terms of the Mortgages related thereto. Except as to payments which are past due under the Mortgage Notes, all escrow balances required by the Mortgages and paid to Seller for the account of the Mortgagors and Seller are on deposit in the appropriate Escrow Accounts.  All funds received by Seller in connection with the Mortgage Loans, including, without limitation, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds and principal reductions, have promptly been deposited in the appropriate account, and all such funds have been applied to reduce the principal balance of the Mortgage Loans in question, or for reimbursement or repairs to the Mortgaged Property or as otherwise required by applicable law.  There are no pledged accounts in lieu of escrow deposits.

(q) Litigation; Compliance with Laws.  As of the related Closing Date, there is and shall be no litigation, proceeding or governmental investigation existing or pending or to the knowledge of Seller threatened, or any order, injunction, decree or settlement agreement outstanding against or relating to Seller or Mortgage Loans, which would likely have a material adverse effect upon the business, operations, assets or financial condition of Seller or which would likely draw into question the validity of this Agreement or which would likely impair the ability of Seller to perform its obligations under this Agreement, nor does Seller know of any basis for any such litigation, proceeding or governmental investigation.  As of the related Closing Date, Seller has not violated and will not violate any applicable law, regulation, ordinance, order, injunction, decree or settlement agreement, nor any other requirement of any governmental body or court, which would likely materially affect any of the Mortgage Loans, the Mortgaged Properties or the Servicing Rights.  For purposes of this Subsection 7.02(q), "litigation" shall include a suit for damages alone and shall not require that a specific performance remedy or injunction impacting the transfer of the Servicing Rights be pending.

(r) Insolvency.  Seller has not (i) admitted in writing its inability to pay its debts generally as they become due, (ii) filed a petition to take advantage of any applicable

-41-