insolvency or reorganization statute, (iii) made an assignment for the benefit of its creditors or (iv) voluntarily suspended payment of any of its obligations.

(s)   Audits.  Seller has not, as of the related Closing Date, been the subject of allegations of material failure to comply with applicable loan origination, servicing or claims procedures, in its most recent audits (if any) nor have any such audits resulted in a request for repurchase of Mortgage Loans or indemnification in connection with the Mortgage Loans, other than as has been disclosed to Purchaser.  Such disclosure shall not affect any rights or remedies which Purchaser may have against Seller as a result of an repurchase demand or any indemnity or other remedy of Purchaser hereunder.

(t)   Compliance with Insurance Contracts.  Seller has complied with all material obligations under all applicable insurance contracts, including hazard, flood and Primary Mortgage Insurance Policies.  Seller has not taken any action or failed to take any action that might cause the cancellation of or otherwise affect any of the insurance contracts.

(u)   [Reserved].

(v)   Errors and Omissions Policy.  Seller has in full force and effect an adequate errors and omissions policy or policies with respect to its servicing operations and a standard mortgage banker's blanket bond.

(w)  Financial Condition of Seller/Regulatory Approval.   Seller is not in receivership, conservatorship or bankruptcy, nor are any of its subsidiaries or affiliates. Seller is not operating pursuant to any restrictive operating agreement or order mandated by the OTS, the FDIC or any federal or state regulatory body.  The capitalization plan of Seller has been approved by all applicable regulatory agencies.

(x)   OTS, FDIC.   The approval of OTS, FDIC or any other federal or state regulatory body having jurisdiction over Seller is not necessary for Seller's execution and consummation of this Agreement or, if necessary, timely approval, reasonably acceptable to Purchaser, including any approval or filing required of Purchaser or Seller pursuant to the Hart-Scott-Rodino Antitrust Improvements Act, shall be obtained by Seller, at its expense but with the assistance of Purchaser, and written evidence of same shall be provided to Purchaser by Seller on or before the Transfer Date.

Subsection 7.03   Remedies for Breach of Representations and Warranties.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, its successors and assigns and the Successor Servicer, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) or the examination or lack of examination of any Mortgage File.  Upon discovery by the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser therein (or which materially and adversely affects the interest of the Purchaser in or the value of the related

-42-

Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the others.

Within sixty (60) days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser therein, the Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price. However, the Seller may, at its option, with the Purchaser's prior approval, such approval not to be withheld unreasonably, and assuming that the Seller has a Substitute Mortgage Loan, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Substitute Mortgage Loan or Loans; provided, however, that any such substitution shall be effected within two (2) years of the related Closing Date. Notwithstanding the above sentence, within sixty (60) days of the earlier of either discovery by, or notice to, the Seller of any breach of the representations or warranties set forth in clauses (f), (yy), (zz), (bbb), (ccc), (jjj), (kkk), (ttt), (uuu) and (vvv) of Subsection 7.01, the Seller shall repurchase such Mortgage Loan at the Repurchase Price. If the Seller has no Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan. Any repurchase of a Mortgage Loan pursuant to the foregoing provisions of this Subsection 7.03 shall occur on a date designated by the Purchaser and shall be accomplished by the Seller remitting by wire transfer to the Purchaser the amount of the Repurchase Price.

At the time of repurchase of any deficient Mortgage Loan (or removal of any Deleted Mortgage Loan), the Purchaser and the Seller shall arrange for the assignment of the repurchased Mortgage Loan (or Deleted Mortgage Loan) to the Seller or its designee and the delivery to the Seller of any documents held by the Purchaser or any custodian relating to the repurchased Mortgage Loan in the manner required by this Agreement with respect to the purchase and sale of such Mortgage Loan on the related Closing Date. In the event a deficient Mortgage Loan is repurchased, the Seller shall, simultaneously with its remittance to the Purchaser of such Repurchase Price, give written notice to the Purchaser that such repurchase has taken place. Upon such repurchase, the Mortgage Loan Schedule shall simultaneously be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

As to any Deleted Mortgage Loan for which the Seller substitutes one or more Substitute Mortgage Loans, the Seller shall effect such substitution by delivering to the Purchaser for each Substitute Mortgage Loan the Mortgage Note, the Mortgage, the Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) and such other documents and agreements as are required by Subsection 6.03. The Seller shall remit to the Servicer for distribution the Monthly Payment due on each Substitute Mortgage Loan in the month following the date of such substitution. Monthly Payments due with respect to Substitute Mortgage Loans in the month of substitution will be retained by the Seller. For the month of substitution, distributions to the Purchaser will include the Monthly Payment due on such Deleted Mortgage Loan in the month of substitution, and the Seller shall thereafter be entitled to retain all amounts subsequently received by it in respect of such Deleted Mortgage Loan. The Seller shall give written notice to the Purchaser that such substitution has taken place and shall amend the Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Substitute Mortgage Loan. Upon such substitution,

-43-

each Substitute Mortgage Loan shall be subject to the terms of this Agreement in all respects, and the Seller shall be deemed to have made with respect to such Substitute Mortgage Loan, as of the date of substitution, the covenants, representations and warranties set forth in Subsections 7.01 and 7.02.

Purchaser shall return or cause to be promptly returned to Seller all Deleted Mortgage Loan Documents with respect to all such Deleted Mortgage Loans for which the Seller substitutes a Substitute Mortgage Loan.

For any month in which the Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Seller will determine the amount (if any) by which the aggregate principal balance of all such Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (after application of scheduled principal payments due in the month of substitution). The amount of such shortfall, plus an amount equal to the aggregate of any Monthly Advances made with respect to such Deleted Mortgage Loans, shall be remitted to the Servicer by the Seller for distribution by the Servicer in the month of substitution.

In addition to such cure, repurchase and substitution obligations, the Seller shall indemnify the Purchaser, its successors and assigns and the Successor Servicer, and hold each of them harmless against any out-of-pocket losses, penalties, fines, forfeitures, legal fees (including (without limitation) legal fees incurred in connection with the enforcement of the Seller's indemnification obligation under this Subsection 7.03) and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion that is based on or grounded upon, or resulting from, a breach of the Seller representations and warranties contained in this Agreement. For purposes of this paragraph, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean the Person then acting as the Successor Servicer under this Agreement and any and all Persons who previously were "Successor Servicers" under this Agreement.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsection 7.01 or 7.02 shall accrue upon the latest to occur of (i) discovery of such breach by the Purchaser or notice thereof by the Seller or the Servicer to Purchaser, (ii) failure by the Seller to cure such breach, repurchase such Mortgage Loan as specified above, substitute a Substitute Mortgage Loan for such Mortgage Loan as specified above and/or indemnify the Purchaser, its successors and assigns and the Successor Servicer, and (iii) demand upon the Seller by the Purchaser for compliance with the terms of this Agreement.

It is understood and agreed that the obligations of the Seller set forth in this Subsection 7.03 to cure, repurchase or substitute for a defective Mortgage Loan and/or to indemnify the Purchaser constitute the sole remedies of the Purchaser respecting a breach of the representations and warranties set forth in Subsections 7.01 and 7.02.

-44-

Subsection 7.04    Covenants of Seller.

(a) Financial Reporting.  The Seller hereby covenants and agrees with Purchaser to deliver to Purchaser:  if requested by Purchaser, the Seller agrees to make available (i) its financial statements for the most recently completed two fiscal years respecting which such statements are available, and (ii) any comparable interim statements to the extent any such statement have been prepared by the Seller (and are available upon request to members or stockholders of the Seller or the public at large).  The Seller, upon request of the Purchaser agrees to furnish promptly copies off the statements specified above.  The Seller also shall make available information on its servicing performance with respect to mortgage loan serviced for others, including delinquency ratios.

The Seller also agrees to allow access to knowledgeable financial, account, origination and servicing officers of the Seller for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Seller, its loan origination or servicing practices or the financial statements of the Seller.

(b) No Economic Interest. Neither Seller nor any affiliate thereof will acquire at any time any economic interest in or obligation with respect to any Mortgage Loan.

(c) Sale Treatment.  Under GAAP and for federal income tax purposes, Seller will report each sale of a Mortgage Loan to Purchaser as a sale of the ownership interest in the Mortgage Loan.  Seller has been advised by or has confirmed with its independent public accountants that the foregoing transactions will be so classified under GAAP.  It is understood that, in making an independent decision to enter into the purchase contemplated hereby, Seller has obtained such independent legal, tax, financial, regulatory and accounting advice as it deems necessary in order to determine the effect of the purchase on Seller, including but not limited to the accounting treatment of such purchase.  It is further understood that Purchaser has not provided, and Seller has not relied on Purchaser for, any legal, tax, financial, regulatory or accounting advice in connection with entering into the purchase.  It is further understood that Purchaser makes no representation or warranty as to the accuracy or appropriateness of any determination by Seller and its independent legal, tax, financial, regulatory and accounting advisers with respect to the effect of the purchase on Seller.

(d) Solvency.  Seller will be solvent at all relevant times prior to, and will not be rendered insolvent by, the sale of a Mortgage Loan to Purchaser.  Seller will not sell any Mortgage Loan to Purchaser with any intent to hinder, delay or defraud any of Seller's creditors.

(e) Compliance with Law.  Seller shall comply, in all material respects, with all laws, rules and regulations to which it is or may become subject.

(f) Further Assurances.  Seller shall, upon request of Purchaser, promptly execute and deliver to Purchaser all such other and further documents and instruments of transfer, conveyance and assignment, and shall take such other action Purchaser may require more effectively to transfer, convey, assign to and vest in Purchaser and to put Purchaser in

USActive ▉▉▉▉

possession of the property to be transferred, conveyed, assigned and delivered hereunder and otherwise to carry out more effectively the intent of the provisions under this Agreement.

(g) Criminal or Fraudulent Activities.  No officer loan originator and/or no employee of Seller shall have been indicted, arraigned, convicted or shall be under investigation for any criminal offenses or any fraudulent activity related to the origination, servicing and sale of any mortgage loans.

(h) Payment of Taxes, Insurance Premiums, Etc.  Seller shall make or cause to be made all payments of all real estate taxes on the Mortgage Loans which (i) will be delinquent on or prior to the related Transfer Date, or (ii) will be delinquent within thirty (30) days after the related Transfer Date.  If tax bills have not been received by Seller by the related Transfer Date on any Mortgage Loans subject to this subsection, Seller shall obtain and pay all tax bills subsequent to the related Transfer Date and the Purchaser will promptly reimburse Seller upon receipt from Seller of documentation evidencing such payment.  On non-impounded accounts, Seller shall ensure that all taxes which would otherwise be delinquent by the related Transfer Date, if not paid by such date, have been paid.  With respect to each of the Mortgage Loans which do not have an impound or escrow account maintained for the payment of taxes and insurance, Seller shall hold harmless and indemnify the Purchaser against any and all costs, expenses, penalties, fines, damages and judgments of whatever kind arising from Seller's failure to pay, or cause to be paid, any delinquent taxes or tax penalties outstanding as of the related Transfer Date.

(i) Interest on Escrows.  Seller shall continue to credit to the account of Mortgagors under the Mortgage Loans all interest required to be paid by applicable law or by the terms of the related Mortgage Note on any escrow account through the Closing Date.  Evidence of such credit shall be provided to Purchaser upon request.

(j) Completion Escrows.  Seller will continue to administer any completion escrows except outstanding as of the Closing Date.  Seller will retain the completion escrow funds and ensure that the remaining work is completed, and the completion escrow funds are disbursed in accordance with the completion escrow agreement. Immediately thereafter, Seller will forward to Purchaser a file containing a copy of the completion escrow agreement and proof that the remaining work has been properly completed and the completion escrow funds have been properly disbursed in accordance with the completion escrow agreement.

(k) Notice of Significant Events.  During the period of this Agreement and during the Interim Period, Seller will promptly notify Purchaser of the occurrence of any of the following:

(1)  any change in Seller's business address and/or telephone number;

(2)  any merger, consolidation or reorganization of Seller, or any changes in Seller's ownership by direct or indirect means.  Indirect means any

-46-

change in ownership of 25% or more of Seller's direct or indirect corporate parent;

(3)     any change in Seller's name;

(4)     any significant adverse change in Seller's financial position;

(5)     entry of any court judgment or regulatory order in which Seller is or may be required to pay a claim or claims which, in Seller's opinion, could have a material adverse effect on Seller's financial condition;

(6)     Seller admits to committing, or is found to have committed, a material violation of any law, regulation, or order relating to its mortgage operation; or

(7)     the initiation of any investigations of Seller by any state or federal agency which could have a material affect on Seller's ability to perform it obligations under this Agreement.

Subsection 7.05     Servicing of the Mortgage Loans.

The Mortgage Loans have been sold by the Seller to the Purchaser on a servicing released basis. Subject to, and upon the terms and conditions of this Agreement and the Interim Servicing Agreement, the Seller hereby sells, transfers, assigns and delivers to the Purchaser the Servicing Rights.

The Purchaser shall retain the Seller as the contract servicer of the Mortgage Loans for an interim period pursuant to and in accordance with the terms and conditions contained in the Interim Servicing Agreement.

Pursuant to the Interim Servicing Agreement, the Seller shall begin servicing the Mortgage Loans on behalf of the Purchaser and shall be entitled to all Servicing Fees due the Seller as set forth in the Interim Servicing Agreement. The Seller shall conduct such servicing in accordance with the terms of the Interim Servicing Agreement.

Subsection 7.06     Seller Covenants Regarding Transfer of Servicing.    On the related Transfer Date, the Purchaser, or its designee, shall assume all servicing responsibilities related to, and the Seller shall cease all servicing responsibilities related to, the Mortgage Loans.  On or prior to the related Transfer Date the Seller shall, at its sole cost and expense take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, including but not limited to the following:

(a) Notice to Mortgagors.  At Seller's expense, Seller shall mail to the Mortgagor of each Mortgage Loan, no later than fifteen (15) days prior to the related Transfer Date, a letter advising the Mortgagor of the transfer of servicing to Purchaser; provided, however, the content, format and timing of the letter shall comply with the Cranston-Gonzalez National Affordable Housing Act of 2000, as amended from time to time, and all other applicable laws.

-47-

(b) <u>Notice to Taxing Authorities and Insurance Companies</u>.  At Seller's expense, and in accordance with the related Transfer Instructions,  Seller shall transmit to the applicable taxing authorities (notice to such taxing authorities may be accomplished by notice to Seller's current tax service provider) and (mortgage/hazard/flood) insurance companies and/or agents, not less than fifteen (15) days prior to the related Transfer Date, notification of the sale of the Servicing Rights to Purchaser and instructions to deliver all notices, tax bills and insurance statements, as the case may be.  For all such notices not accomplished by tape transmission, Seller shall provide Purchaser with a copy of a sample notice and an officer's certification signed by a Vice President or above that all notices have been sent as required.  The Seller shall provide the Purchaser and its servicing designee with a list of the tax lines and parcel numbers for the related Mortgaged Properties.  Seller shall provide Purchaser and its servicing designee with a list of all applicable taxes, assessments and ground rents to be paid within thirty (30) days after the related Transfer Date.

(c) <u>Delivery of Loan Documents</u>.  Seller shall have delivered to Purchaser or its designee, no later than five (5) Business Days following the Transfer Date, servicing records and miscellaneous servicing lists listed in Exhibit 2 and Exhibit 11 in accordance with Section 6 hereof.

(d) <u>Escrow Payments</u>.  No later than five (5) Business Days after the Transfer Date, the Seller shall provide the Purchaser, or its designee, with immediately available funds by wire transfer in the amount of the net Escrow Payments, impound and suspense balances, buydown fees, all loss draft balances and all unearned fees associated with the Mortgage Loans.  No later than five (5) Business Days after the Transfer Date, the Seller shall provide the Purchaser with an accounting statement of Escrow Payments and suspense balances and loss draft balances sufficient to enable the Purchaser to reconcile the amount of such payment with the accounts of the Mortgage Loans. Additionally, no later than five (5) Business Days after the Transfer Date, the Seller shall wire transfer to the Purchaser the amount of any agency, trustee or prepaid Mortgage Loan payments and all other similar amounts held by the Seller.

(e) <u>Payoffs and Assumptions; Unremitted Principal</u>. The Seller shall provide to the Purchaser, or its designee, copies of all assumption and payoff statements generated by the Seller on the Mortgage Loans from the Cut-off Date to the related Transfer Date. No later than five (5) Business Days after the related Transfer Date, Seller shall provide Purchaser with immediately available funds in the amount of the unremitted principal and interest associated with the Mortgage Loans which has not been deposited into Purchaser's custodial accounts.  No later than five (5) Business Days after the related Transfer Date, Seller shall provide Purchaser with an accounting statement of the unremitted principal and interest sufficient to enable Purchaser to reconcile same with the accounts of the Mortgage Loans.

(f) <u>Mortgage Payments Received Prior to Transfer Date</u>. Prior to the Transfer Date all payments received by the Seller on each Mortgage Loan shall be properly applied by the Seller to the account of the particular Mortgagor.

USActive

(g) <u>Mortgage Payments Received After Transfer Date</u>. Seller shall forward to Purchaser the amount of any Monthly Payments and correspondence relating to the Mortgage Loans received by Seller for sixty (60) days after the Transfer Date by regular U.S. mail.  After sixty (60) days from the Transfer Date, Seller may forward the amount of any Monthly Payments and correspondence relating to the Mortgage Loans by regular U.S. mail on a weekly basis.  Seller shall notify Purchaser of the  particulars of the payment, which notification requirement shall be satisfied if Seller forwards with its payment sufficient information to permit appropriate processing of the payment by Purchaser.  Seller shall endorse the Monthly Payment to Purchaser and include the particulars of the  payment.  Purchaser's loan number, date received and any special Mortgagor application instructions.

(h) <u>Misapplied Payments</u>. Misapplied payments shall be processed as follows:

 (A) All parties shall cooperate in correcting misapplication errors.

 (B) The party receiving notice of a misapplied payment occurring prior to the Transfer Date and discovered after the Transfer Date shall immediately notify the other party.

 (C) If a misapplied payment which occurred prior to the Transfer Date cannot be identified and said misapplied payment has resulted in a shortage in a Custodial Account or Escrow Account, the Seller shall be liable for the amount of such shortage. The Seller shall reimburse the Purchaser for the amount of such shortage within thirty (30) days after receipt of written demand therefor from the Purchaser.

 (D) If a misapplied payment which occurred prior to the Transfer Date has created an improper Purchase Price as the result of an inaccurate outstanding principal balance, a check shall be issued to the party shorted by the improper payment application within five (5) Business Days after notice thereof by the other party.  Whichever  party discovers the misapplied payment will notify the other and the parties will then comply promptly with this paragraph.

 (E) Any check issued under the provisions of this Subsection 7.06(i) shall be accompanied by a statement indicating the corresponding Seller and/or the Purchaser Mortgage Loan identification number and an explanation of the allocation of any such payments.

(i) <u>Books and Records</u>. On the related Transfer Date, the books, records and accounts of the Seller with respect to the Mortgage Loans shall be in accordance with all applicable Purchaser requirements.

(j) <u>Reconciliation</u>. The Seller shall, on or before the related Transfer Date, reconcile principal balances and make any monetary adjustments required by the

-49-

Purchaser. Any such monetary adjustments will be transferred between the Seller and the Purchaser as appropriate.

(k) <u>Data Reconciliation</u>.  Seller shall forward to Purchaser, in an electronic format, such additional reports as are required by Purchaser to reconcile data conversion from Seller's computer system to Purchaser's computer system.

(l) <u>IRS Forms</u>. Seller shall mail, on or before the date required by law, all IRS required forms, including form numbers 1099 and 1098 (as appropriate) to all parties entitled to receive same through the Transfer Date.  Seller shall provide copies of such forms to Purchaser upon request and shall reimburse Purchaser for any costs or penalties incurred by Purchaser due to Seller's failure to comply with this paragraph.  The Purchaser or the Purchaser's designee shall prepare and file all such reports with respect to any period commencing on or after the related Transfer Date.

(m)<u>Returned Checks</u>.  Purchaser shall reimburse Seller within seven (7) Business Days for all checks for Mortgage Loan Monthly Payments received by Seller prior to the related Transfer Date and which are returned to Seller, unpaid, on or after the related Transfer Date.  Seller shall identify the check, show how the check was applied to the Mortgagor's account, and present the returned check to the Purchaser promptly after receipt.

(n) <u>Insurance Policies</u>.  After the related Transfer Date, Seller shall deliver such insurance policies or renewals as it may receive to Purchaser within five (5) Business Days of its receipt of same.

(o) <u>Payment of Property Insurance Premiums</u>.  Seller shall pay, prior to the related Transfer Date, all property insurance premiums for which it receives bills five (5) Business Days prior to the related Transfer Date that are due within thirty (30) days after the related Transfer Date.  Seller shall within five (5) Business Days after the related Transfer Date deliver to the Purchaser all bills and correspondence related to the Mortgage Loans and received by it four (4) Business Days or less prior to the related Transfer Date and subsequent to the related Transfer Date.  On the related Transfer Date, Seller shall forward to Purchaser a listing of all Mortgage Loans that have property insurance premiums due within thirty (30) days after the related Transfer Date and for which Seller did not pay the bills prior to the related Transfer Date.

(p) <u>Escrow Analysis</u>.  Each Mortgage Loan required by applicable law to have had an escrow analysis prior to the related Transfer Date shall have had an escrow analysis performed on it by Seller prior to the related Transfer Date.  Where an escrow analysis on a Mortgage Loan either (i) is scheduled to be performed by Seller within two (2) months prior to the related Transfer Date, or (ii) has not been performed within twelve (12) months prior thereto, Seller will both perform such escrow analysis and notify the affected Mortgagor(s) as to the new payment amount on or before a date one (1) month prior to the related Transfer Date. There will be no inflation factor used in the escrow analysis.  Refunds of escrow overages are to be made in accordance with applicable law. Escrow shortages are to be billed or prorated in the monthly payment over a period of not

-50-

more than twelve (12) months.  Copies of the escrow analyses by month and in Mortgage Loan number order, if applicable, are to be provided to Purchaser within five (5) Business Days of the related Transfer Date on microfilm.

(q) <u>Property Taxes</u>.  Seller shall cause to be paid prior to the related Transfer Date all tax bills (including interest, late charges, and penalties in connection therewith) that are issued by a taxing authority and relate to a Mortgaged Property and that are received by Seller, or released and available to Seller's tax service provider in states where Seller utilizes a tax service provider, five (5) Business Days prior to the related Transfer Date that are due within thirty (30) days after the related Transfer Date.  Seller or, on behalf of Seller, its tax service provider, shall immediately forward to Purchaser all tax bills received by Seller after the related Transfer Date or received by Seller before the related Transfer Date but which are due more than thirty (30) days after the related Transfer Date.  The foregoing shall in no way impose upon Seller an obligation to pay any taxes (including interest, late charges, and penalties associated therewith) for which (i) a title insurer has an obligation to pay by virtue of the terms of a mortgagee policy of title insurance which is issued in connection with the origination of the subject Mortgage Loans and which insures Purchaser subsequent to the related Transfer Date or (ii) a taxing authority has billed the Mortgagor directly rather than billing Seller or the tax service provider directly (except to preclude loss of the Mortgaged Property where the taxes have not been paid by the Mortgagor).  On the related Transfer Date, Seller shall forward to Purchaser a listing of all Mortgage Loans that have property taxes due within thirty (30) days after the related Transfer Date and for which Seller did not pay the bills prior to the related Transfer Date.

If Seller uses a tax contract vendor other than FARETS, the Purchaser may elect to have the vendor transfer life-of-loan tax service responsibility to FARETS; provided such transfer is acceptable to FARETS and is at no cost to Purchaser.  Seller must provide written documentation of FARETS' acceptance of the transfer of life-of-loan tax contract responsibility.  If FARETS does not consent to the transfer of life-of-loan tax contract responsibility, then Seller must obtain new tax service contracts with FARETS.

(r) [Reserved].

(s) [Reserved].

(t) [Reserved].

(u) [Reserved].

(v) [Reserved].

(w)<u>Bi-Weekly Servicing</u>.  Neither Seller nor its agent will solicit any Mortgage Loans for participation in any bi-weekly payment plans after the Closing Date.  If Seller has Bi-Weekly Mortgage Loans under contract with Paymap, by the related Transfer Date, Seller will assign and transfer to Purchaser the entire Paymap relationship with such affected Mortgagors and all right to collect future commissions on such Bi-Weekly Mortgage Loans.   To the extent Seller receives such commissions, Seller will

-51-

immediately forward the commission on to Purchaser. If Seller has Bi-Weekly Mortgage Loans under contract with a vendor other than Paymap, Seller shall cooperate with Purchaser and Paymap in setting up fully paid, life-of-loan, transferable bi-weekly payment plans with Paymap.  Purchaser shall be responsible for the payment to Paymap of any set up or conversion fees required by Paymap for setting up such bi-weekly plans. If Seller is unable to assign or transfer such rights, Seller shall exclude any Mortgage Loans with bi-weekly payment plans from this sale transaction, unless prohibited by applicable law.

(x) Future On-Site Due Diligence.  Upon reasonable notice and upon Purchaser's reasonable request, Seller shall permit Purchaser or its designee to perform a relevant on-site due diligence review of Seller's operations.

(y) Insurance.  No later than five (5) Business Days prior to the related Transfer Date, Seller shall have obtained, sufficient insurance protecting against any losses occurring to any of the Mortgage Loan Documents and Servicing Files prior to their delivery to Purchaser or Purchaser's Custodian (it being specifically understood that the risk of loss occurring as a result of the loss or damage to the Mortgage Loan Documents and Servicing Files prior to Purchaser or Purchaser's Custodian's receipt of such files shall reside with Seller), and Seller shall cause its Custodian to deliver to Purchaser's Custodian the Mortgage File for each Mortgage Loan, with the understanding that the Mortgage Loan Documents sent for recording, but not yet received by Seller (the "Trailing Documents"), shall be forwarded to Purchaser's Custodian upon Seller's receipt.

(z) [Reserved].

(aa)    [Reserved].

(bb)    Cooperation.  To the extent reasonably possible, the parties hereto shall cooperate with and assist each other, as requested, in carrying out the other's covenants, agreements, duties and responsibilities under this Agreement and in connection herewith shall execute and deliver all such documents and instruments as shall be necessary and appropriate in the furtherance thereof.  After the related Transfer Date, Seller will be deemed to be holding all sums received by it in respect of any Mortgage Loan in trust on Purchaser's behalf and immediately upon receipt, Seller shall pay over all such sums to Purchaser and provide information detailing when the payments were received.  In addition, Seller will hold for Purchaser all communications, inquiries, legal instruments and other documents received by it with respect to the Mortgage Loans and shall promptly forward same to Purchaser.

Subsection 7.07    Early Payment Default.

Except as otherwise set forth in the related Terms Letter, with respect to any Mortgage Loan, if the related Mortgagor fails to make (a) the Mortgage Loan's first Monthly Payment after origination on or prior to the date which is thirty (30) days after the related Due Date or (b) any of the first or second Monthly Payment due to the Purchaser after the related Closing Date on or

-52-

prior to the date which is thirty days after the related Due Date, the Seller shall, upon receipt of notice from the Purchaser, promptly repurchase such Mortgage Loan from the Purchaser in accordance with Subsection 7.03 hereof. The Purchaser shall notify the Seller of any such early payment default within ninety (90) days of the date on which the related Monthly Payment is 30 days delinquent.

Subsection 7.08    Purchase Price Protection.

Except as otherwise set forth in the related Terms Letter, with respect to any Mortgage Loan that is prepaid in full during the one (1) month period from and after the related Closing Date, the Seller shall, upon notice thereof from the Purchaser to the Seller no later than ninety (90) days after the date of notification of such prepayment, reimburse the Purchaser within five (5) Business Days of notice of such prepayment in full, the amount (if any) by which the Purchase Price paid by the Purchaser to the Seller exceeded 100% of the outstanding scheduled principal balance of the Mortgage Loan as of the related Cut-off Date less the amount of any Prepayment Penalty remitted to the Purchaser in connection with the payoff.    Upon any assignment of a Mortgage Loan and/or this Agreement, the Purchaser may at its option retain its rights under this Subsection 7.08 notwithstanding such assignment.

In the event that any such Mortgage Loan prepays in full during the period between the Cut-off Date and the Closing Date, the Seller shall either (i) substitute a Mortgage Loan for the Mortgage Loan that prepaid in full, (ii) shall consent to a readjustment of the Purchase Price,  or (iii) pay the Purchaser, within five (5) Business Days of receipt of notice of such prepayment in full, the difference between the Purchase Price (as adjusted) for such Mortgage Loan and the outstanding principal balance of such Mortgage Loan as of the Cut-off Date.

SECTION 8.   Closing.

The closing for the purchase and sale of the Mortgage Loans in each Mortgage Loan Package shall take place on the related Closing Date.   The closing shall be by telephone, confirmed by letter or wire as the parties shall agree.   The closing shall be subject to each of the following conditions:

(a) all of the representations and warranties of the Seller in this Agreement shall be true and correct as of the related Closing Date and, to the Seller's knowledge, no event shall have occurred which, with notice or the passage of time, would constitute default under this Agreement or Event of Default under the Interim Servicing Agreement;

(b) the Seller's attorneys shall have received in escrow all Closing Documents as specified in Section 9 as to be delivered by the Seller on each Closing Date, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories as required pursuant to the terms hereof; and

(c) all other terms and conditions of this Agreement required to be complied with or performed shall have been complied with or performed.

SECTION 9.    Closing Documents.

On the initial Closing Date, the Seller shall deliver to the Purchaser in escrow fully executed originals of:

(a) this Agreement, including all exhibits;

(b) an Officer's Certificate, in the form of Exhibit 1 hereto, for the Seller including all attachments thereto;

(c) an opinion of in-house counsel for the Seller substantially in the form attached hereto as Exhibit 6;

(d) an Escrow Account Certification;

(e) a Custodial Account Certification;

(f) a MERS Report reflecting the Custodian as Investor and no Person as Interim Funder for each MERS Designated Mortgage Loan.

The Closing Documents to be delivered by the Seller on each Closing Date shall consist of fully executed originals of the following documents:

(a) an Assignment and Conveyance in the form of Exhibit 9 hereto, including all exhibits;

(b) a Terms Letter;

(c) the related Mortgage Loan Schedule, with one copy to be attached to the related Assignment and Conveyance;

(d) a security release certification executed by any other person, as requested by the Purchaser, if any of the Mortgage Loans have at any time been subject to a security interest, pledge or hypothecation for the benefit of such person, except that, if such person is the Federal Home Loan Bank ("FHLB"), a customary bailee letter from the FHLB shall be sufficient to fulfill this requirement; and

(e) a MERS Report reflecting the Purchaser as Investor and no other Person as Interim Funder for each MERS Designated Mortgage Loan.

SECTION 10. Costs; Assignments.

The Purchaser shall pay any commissions due its salesmen, the expenses of its accountants and attorneys and the expenses and fees of any broker retained by the Purchaser with respect to the transaction covered by this Agreement.  All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans and related Servicing Rights including, without limitation, fees for recording intervening assignments of Mortgage and Assignments of Mortgage, fees for obtaining or transferring tax service contracts and the legal

USActive

fees and expenses of its attorneys shall be paid by the Seller. The Seller shall be responsible for causing to occur the recordation of any intervening assignments of Mortgage.

SECTION 11. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(a)     if to the Purchaser:

> J.P. Morgan Mortgage Acquisition Corp.
> 270 Park Avenue
> 10th Floor
> Mailstop: NY1-K262
> New York, New York 10017
> Attention: Head of Whole Loan Transaction Management

with copies to:

> JPMorgan Chase & Co.
> 270 Park Avenue
> 40th Floor
> New York, New York 10017
> Attention:  General Counsel's Office

and:

> J.P. Morgan Mortgage Acquisition Corp.
> 4 Chase Metrotech Center
> Floor 22
> Brooklyn, NY  11245-0001
> Attn:  Corporate Secretary

with an email copy to:

> JPMMACNotices@jpmorgan.com

(b)     if to the Seller or Servicer:

> First National Bank of Nevada
> 1665 West Alameda Drive
> Tempe, Arizona 85282
> Attention:  Secondary Marketing

or such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date

-55-

USActive ▮▮▮▮

delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 12. Cooperation of Seller with a Reconstitution.

The Seller and the Purchaser agree that with respect to some or all of the Mortgage Loans, after the related Closing Date, on one or more dates (each a "Reconstitution Closing Date") at the Purchaser's sole option, the Purchaser may effect a sale (each, a "Reconstitution") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to:

     (i)    Fannie Mae under its Cash Purchase Program or MBS Program (Special Servicing Option) (each a "Fannie Mae Transfer"); or

     (ii)    Freddie Mac (the "Freddie Mac Transfer"); or

     (iii)    one or more third party purchasers in one or more Whole Loan Transfers; or

     (iv)    one or more trusts or other entities to be formed as part of one or more Securitization Transactions.

With respect to each Reconstitution, the Purchaser agrees to deliver to the related Master Servicer on or prior to the date which is five (5) Business Days prior to the related Reconstitution Closing Date, a Mortgage Loan Schedule.  The Seller agrees to execute (i) in connection with any Agency Transfer, any and all pool purchase contracts, and/or agreements reasonably acceptable to the Master Servicer and the Purchaser among the Purchaser, the Master Servicer, the Seller, Fannie Mae or Freddie Mac (as the case may be) and any servicer, (ii) in connection with a Whole Loan Transfer, an assignment, assumption and recognition agreement, a seller's warranties and servicing agreement or a participation and servicing agreement in form and substance reasonably acceptable to the Purchaser, and (iii) in connection with a Securitization Transaction, a pooling and servicing agreement in form and substance reasonably acceptable to the Purchaser and the Master Servicer, a reconstitution agreement substantially in the form attached hereto as Exhibit 12, or an Assignment, Assumption and Recognition Agreement substantially in the form attached hereto as Exhibit 7 (collectively the agreements referred to herein are designated, the "Reconstitution Agreements").

With respect to each Whole Loan Transfer and each Securitization Transaction entered into by the Purchaser and the Master Servicer, the Seller agrees (1) to cooperate fully with the Purchaser and the Master Servicer and any prospective purchaser with respect to all reasonable requests and due diligence procedures; (2) to execute, deliver and perform all Reconstitution Agreements required by the Purchaser and the Master Servicer; (3) to restate the representations and warranties set forth in Section 7.01(b), (c), (e), (g), (i), (j), (k), (w), (ii), (nn), (pp), (qq), (rr), (bbb), and (ggg) of this Agreement as of the related Transfer Date and to restate the representations and warranties set forth in Section 7.02 of this Agreement as of the settlement or closing date in connection with such Reconstitution (each, a "Reconstitution Date") or make such representations and warranties as may be required by any Rating Agency or prospective purchaser of the related securities or such Mortgage Loans, in connection with such Reconstitution; (4) to deliver to Purchaser and any prospective purchaser within three (3) days after request by Purchaser or prospective purchaser, information, in form and substance

-56-

satisfactory to Purchaser and such prospective purchaser, with respect to each originator of the Mortgage Loans reasonably requested by the Purchaser. The Seller shall use its reasonable best efforts to provide to such master servicer or issuer, as the case may be, and any other participants or purchasers in such Reconstitution: (i) any and all information and appropriate verification of information which may be reasonably available to the Seller or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser, the Master Servicer or any such other participant shall request; (ii) such additional representations, warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Seller and/or the Servicer as are reasonably believed necessary by the Purchaser, the Master Servicer or any such other participant; and (iii) to execute, deliver and satisfy all conditions set forth in any indemnity agreement required by the Purchaser, the Master Servicer or any such participant.  Moreover, the Seller agrees to cooperate with all reasonable requests made by the Purchaser or the Master Servicer to effect such Reconstitution Agreements.

The Seller shall indemnify the Purchaser, the Successor Servicer, the Master Servicer, and each Affiliate designated by the Purchaser or the Master Servicer and each Person who controls the Purchaser, the Master Servicer or such Affiliate and hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that each of them may sustain in any way related to any information provided by or on behalf of the Seller regarding the Seller, the Seller's servicing practices or performance, the Mortgage Loans or the Underwriting Guidelines set forth in any offering document prepared in connection with any Reconstitution.  For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean the Person then acting as the Successor Servicer under this Agreement and any and all Persons who previously were "Successor Servicers" under this Agreement.

In the event the Purchaser or the Master Servicer has elected to have the Seller hold record title to the Mortgages, prior to the Reconstitution Date, the Seller shall prepare an assignment of mortgage in blank or to the prospective purchaser or trustee, as applicable, from the Seller, acceptable to the prospective purchaser or trustee, as applicable, for each Mortgage Loan that is part of the Reconstitution and shall pay all preparation and recording costs associated therewith (except with respect to each MERS Designated Mortgage Loan).   In connection with the Reconstitution, the Seller shall execute each Assignment of Mortgage, (except with respect to each MERS Designated Mortgage Loan), track such Assignments of Mortgage to ensure they have been recorded and deliver them as required by the prospective purchaser or trustee, as applicable, upon the Seller's receipt thereof.  Additionally, the Seller shall prepare and execute, at the direction of the Purchaser or the Master Servicer, any note endorsement in connection with any and all seller/servicer agreements.

All Mortgage Loans not sold or transferred pursuant to a Reconstitution shall remain subject to this Agreement and, shall continue to be serviced in accordance with the terms of this Agreement and with respect thereto this Agreement shall remain in full force and effect.

USActive ▮▮▮▮

SECTION 13. <u>Compliance with Regulation AB</u>

Subsection 13.01 <u>Intent of the Parties; Reasonableness</u>.  The Purchaser and the Seller acknowledge and agree that the purpose of Section 13 of this Agreement is to facilitate compliance by the Purchaser and any Depositor with the provisions of Regulation AB and related rules and regulations of the Commission.  Although Regulation AB is applicable by its terms only to offerings of asset-backed securities that are registered under the Securities Act, the Seller acknowledges that investors in privately offered securities may require that the Purchaser or any Depositor provide comparable disclosure in unregistered offerings.  References in this Agreement to compliance with Regulation AB include provision of comparable disclosure in private offerings.

Neither the Purchaser nor any Depositor shall exercise its right to request delivery of information or other performance under these provisions other than in good faith, or for purposes other than compliance with the Securities Act, the Exchange Act and the rules and regulations of the Commission thereunder (or the provision in a private offering of disclosure comparable to that required under the Securities Act).  The Seller acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, and agrees to comply with requests made by the Purchaser or any Depositor in good faith for delivery of information under these provisions on the basis of evolving interpretations of Regulation AB.

The Purchaser (including any of its assignees or designees) shall cooperate with the Seller by providing timely notice of requests for information under these provisions and by reasonably limiting such requests to information required, in the Purchaser's reasonable judgment, to comply with Regulation AB.

Subsection 13.02 <u>Information to Be Provided by the Seller</u>. In connection with any Securitization Transaction the Seller shall (1) within five Business Days following request by the Purchaser or any Depositor, provide to the Purchaser and such Depositor (or, as applicable, cause each Third-Party Originator to provide), the information and materials specified in paragraphs (a) and (b) of this Section 13.02, and (2) as promptly as practicable following notice to or discovery by the Seller, provide to the Purchaser and any Depositor (in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor) the information specified in paragraph (c) of this Section.

(a) If so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding (y) the Seller, as originator of the Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), or (z) each Third-Party Originator, as is requested for the purpose of compliance with Items 1110(b), 1117 and 1119 of Regulation AB; provided, that, such Purchaser or Depositor shall confirm in writing that Seller and each Third-Party Originator, as applicable, meets the threshold disclosure requirements of Items 1110(b), 1117, and 1119 of Regulation AB, as the case may be.  Such information shall be in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor include, at a minimum:

(1)     the originator's form of organization;

-58-

(2)     a description of the originator's origination program and how long the originator has been engaged in originating residential mortgage loans, which description shall include a discussion of the originator's experience in originating mortgage loans of a similar type as the Mortgage Loans; information regarding the size and composition of the originator's origination portfolio; and information that may be material, in the good faith judgment of the Purchaser or any Depositor, to an analysis of the performance of the Mortgage Loans, such as the originators' credit-granting or underwriting criteria for mortgage loans of similar type(s) as the Mortgage Loans for the purpose of compliance with Item 1110(b)(2) of Regulation AB;

(3)     a description of any material legal proceedings pending or known to be contemplated by governmental authorities against the Seller and each Third-Party Originator; and

(4)     a description of any known affiliation or relationship between the Seller, each Third-Party Originator and any of the following parties to a Securitization Transaction, as such parties are identified to the Seller by the Purchaser or any Depositor in writing in advance of such Securitization Transaction:

      (A)     the sponsor;

      (B)     the depositor;

      (C)     the issuing entity;

      (D)     any servicer;

      (E)     any trustee;

      (F)     any originator;

      (G)     any significant obligor;

      (H)     any enhancement or support provider; and

      (I)     any other material transaction party.

(b) If so requested by the Purchaser or any Depositor, the Seller shall provide (or, as applicable, cause each Third-Party Originator to provide) Static Pool Information with respect to the mortgage loans (of a similar type as the Mortgage Loans, as reasonably identified by the Purchaser as provided below) originated by (a) the Seller, if the Seller is an originator of Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), and/or (b) each Third-Party Originator.  Such Static Pool Information shall be prepared by the Seller (or Third-Party Originator) on the basis of its reasonable, good faith interpretation of the requirements of Item 1105(a)(1)-(3) of Regulation AB; provided, however, that Seller shall not be required to provide Static

USActive ▬▬▬

Pool Information with respect to mortgage loans originated prior to January 1, 2006 pursuant to Item 1105(f) of Regulation AB or to the extent such Static Pool Information is not available to Seller by commercially reasonably means. To the extent that there is reasonably available to the Seller (or Third-Party Originator) Static Pool Information with respect to more than one mortgage loan type, the Purchaser or any Depositor shall be entitled to specify whether some or all of such information shall be provided pursuant to this paragraph. The content and presentation of such Static Pool Information may be in the form customarily provided by the Seller, and need not be customized for the Purchaser or any Depositor. Such Static Pool Information for each vintage origination year or prior securitized pool, as applicable, shall be presented in increments no less frequently than quarterly over the life of the mortgage loans included in the vintage origination year or prior securitized pool. The most recent periodic increment must be as of a date no later than 135 days prior to the date of the prospectus or other offering document in which the Static Pool Information is to be included or incorporated by reference. The Static Pool Information shall be provided in an electronic format that provides a permanent record of the information provided, such as a portable document format (pdf) file, or other such electronic format as customarily provided by Seller or if Seller does not customarily provide such information as reasonably required by the Purchaser or the Depositor, as applicable.

Promptly following notice or discovery of a material error in Static Pool Information provided pursuant to the immediately preceding paragraph (including an omission to include therein information required to be provided pursuant to such paragraph), the Seller shall provide corrected Static Pool Information to the Purchaser or any Depositor, as applicable, in the same format in which Static Pool Information was previously provided to such party by the Seller.

(c) If so requested by the Purchaser or any Depositor for the purpose of satisfying its reporting obligation under the Exchange Act with respect to any class of asset-backed securities and provided that the Seller (or any Third-Party Originator) meets the requirements for disclosure pursuant to Item 1117 of Regulation AB, the Seller shall (or shall cause each Third-Party Originator to) (a) notify the Purchaser and any Depositor in writing of (1) any litigation or governmental proceedings pending which would be material to a securityholder in the related Securitization Transaction, in each case within the meaning of Item 1117 of Regulation AB, against the Seller or any Third-Party Originator and (2) any affiliations or relationships that develop following the closing date of a Securitization Transaction between the Seller or any Third-Party Originator and any of the parties specified in clause (4) of paragraph (a) of this Section 13.02 (and any other parties identified in writing by the requesting party) with respect to such Securitization Transaction, and (b) provide to the Purchaser and any Depositor a description of such proceedings, affiliations or relationships.

(d) With respect to those Mortgage Loans that were sold by the Seller to the Purchaser pursuant to this Agreement, the Purchaser shall make reasonable efforts, to the extent consistent with then-current industry practice, to cause the Successor Servicer (or another party) to be obligated to provide information as set forth on Exhibit 13 attached hereto, in the form customarily provided by such Successor Servicer or other party (which need not be customized for the Seller), with respect to the Mortgage Loans

-60-

reasonably necessary for the Seller to prepare Static Pool Information (such information provided by the Successor Servicer or such other party, the "Loan Performance Information"). The Loan Performance Information shall be delivered in electronic format to risk_management@fnbaonline.com on a monthly basis beginning with the remittance date for the first due period following the related Transfer Date. Prior to the delivery of the Loan Performance Information by the Successor Servicer or other party to the Seller, the Seller shall execute a confidentiality and non-disclosure agreement reasonably satisfactory to the Purchaser or the Purchaser's designee. None of the Purchaser, the Successor Servicer nor other parties shall indemnify the Seller for Loan Performance Information.

Subsection 13.03 <u>Indemnification; Remedies</u>. (i) The Seller shall indemnify the Purchaser, each affiliate of the Purchaser and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction; and the respective present and former directors, officers, employees and agents of each of the foregoing (collectively, the "Indemnified Parties"), and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses (collectively, "Losses") that any of them may sustain arising out of or based upon:

(a) (1) any untrue statement of a material fact contained or alleged to be contained in any information, report, or other material provided in written or electronic form under this Section 13 by or on behalf of the Seller, or provided under this Section 13 by or on behalf of any Third-Party Originator (collectively, the "<u>Seller Information</u>"), or (2) the omission or alleged omission to state in the Seller Information a material fact required to be stated in the Seller Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, by way of clarification, that clause (2) of this paragraph shall be construed solely by reference to the Seller Information and not to any other information communicated in connection with a sale or purchase of securities, without regard to whether the Seller Information or any portion thereof is presented together with or separately from such other information; and further provided, that no party shall be indemnified for settlement of any claim which is based solely on an alleged omission without the consent of the Seller, acting in good faith, which consent shall not be unreasonably withheld or delayed;

(b) any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Section 13; or

(c) any breach by the Seller of a representation or warranty set forth in Section 13 or in a writing furnished pursuant to Section 13 and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Section 13 to the extent made as of a date subsequent to such closing date.

USActive

In the case of any failure of performance described in clause (i)(B) of this Section, the Seller shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction for all costs reasonably incurred by each such party in order to obtain the information, report, accountants' letter or other material not delivered as required by the Seller or any Third-Party Originator.

Subsection 13.04 <u>Additional Representations and Warranties of the Seller.</u>  If so requested by the Purchaser, if either the Seller or any Third-Party Originator meets the requirements for disclosure under Items 1117 or 1119 of Regulation AB, the Seller shall be deemed to represent to the Purchaser and to any Depositor, as of the date on which information is first provided to the Purchaser or any Depositor under Section 2(c) that, except as disclosed in writing to the Purchaser or such Depositor on or prior to such date:  (i) there are no legal proceedings pending or known to be contemplated by governmental authorities which would be material to a securityholder in the related Securitization Transaction, within the meaning of Item 1117 of Regulation AB, against the Seller or any Third-Party Originator; and (ii) there are no affiliations, relationships or transactions relating to the Seller or any Third-Party Originator with respect to any Securitization Transaction and any party thereto identified by the related Depositor of a type described in Item 1119 of Regulation AB.

SECTION 14. <u>Additional Indemnification by the Seller and Servicer; Third Party Claims</u>.

The Seller and Servicer shall each indemnify the Purchaser, its successors and assigns and the Successor Servicer and hold each of them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees (including (without limitation) legal fees incurred in connection with the enforcement of the Seller's and Servicer's indemnification obligation under this Section 14) and related costs, judgments, and any other costs, fees and expenses that the Purchaser, its successors or assigns or the Successor Servicer may sustain in any way related to (a) any breach of any of Seller's representations, warranties or covenants set forth in this Agreement, (b) the failure of the Seller to perform its duties under this Agreement or (c) the failure of the Seller or the Servicer to service the Mortgage Loans in strict compliance with the terms of this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement entered into pursuant to Section 12.  The Seller or the Servicer immediately shall notify the Purchaser if a claim is made by a third party with respect to this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim.  The Purchaser promptly shall reimburse the Seller or the Servicer, as applicable, for all amounts advanced by it pursuant to the preceding sentence, except when the claim is in any way related to the Seller's indemnification pursuant to Section 7.03 or the first sentence of this Section 14, or is in any way related to the failure of the Seller or the Servicer to service and administer the Mortgage Loans in strict compliance with the terms of this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement.

USActive ▮▮▮▮▮▮

SECTION 15. <u>Severability Clause</u>.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.   Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.   To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.   If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 16. <u>No Partnership</u>.

Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for the Purchaser or the Master Servicer.

SECTION 17. <u>Counterparts</u>.

This Agreement may be executed simultaneously in any number of counterparts.   Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 18. <u>Governing Law</u>.

**EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW, THE AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICTS OF LAWS PROVISIONS OF NEW YORK OR ANY OTHER JURISDICTION.**

SECTION 19. <u>Intention of the Parties</u>.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, the Mortgage Loans and not a debt instrument of the Seller or another security.   Accordingly, the parties hereto each intend to treat the transaction for federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans.   The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Files to determine the characteristics of the Mortgage Loans which shall affect the federal income tax consequences of

owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

It is not the intention of the parties that such conveyances be deemed a pledge thereof. However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of the Seller or if for any other reason this Agreement is held or deemed to create a security interest in either such assets, then (a) this Agreement shall be deemed to be a security agreement within the meaning of the Uniform Commercial Code of the State of New York and (b) the conveyances provided for in this Agreement shall be deemed to be an assignment and a grant by the Seller to the Purchaser of a security interest in all of the assets transferred, whether now owned or hereafter acquired.

SECTION 20. Waivers.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 21. Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 22. General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c) references herein to "Articles," "Sections," "Subsections," "Paragraphs" and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d) reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall mean without limitation by reason of enumeration.

-64-

SECTION 23. Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties hereto agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party hereto in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 24. Amendment.

This Agreement may be amended from time to time by the Purchaser, the Seller and the Servicer by written agreement signed by the parties hereto.

SECTION 25. Confidentiality.

Each of the Purchaser, the Seller and the Servicer shall employ proper procedures and standards designed to maintain the confidential nature of the terms of this Agreement, except to the extent (a) the disclosure of which is reasonably believed by such party to be required in connection with regulatory requirements or other legal requirements relating to its affairs; (b) disclosed to any one or more of such party's employees, officers, directors, agents, attorneys or accountants who would have access to the contents of this Agreement and such data and information in the normal course of the performance of such person's duties for such party, to the extent such party has procedures in effect to inform such person of the confidential nature thereof;  (c) that is disclosed in a prospectus, prospectus supplement or private placement memorandum relating to a securitization of the Mortgage Loans by the Purchaser (or an affiliate assignee thereof) or to any Rating Agency or other person in connection with the resale or proposed resale of all or a portion of the Mortgage Loans by such party in accordance with the terms of this Agreement; and (d) that is reasonably believed by such party to be necessary for the enforcement of such party's rights under this Agreement.

SECTION 26. Entire Agreement.

This Agreement constitutes the entire agreement and understanding relating to the subject matter hereof between the parties hereto and any prior oral or written agreements between them shall be deemed to have merged herewith.

SECTION 27. Further Agreements.

The Seller, the Servicer, and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

USActive ████

SECTION 28. <u>Successors and Assigns</u>.

This Agreement shall bind and inure to the benefit of and be enforceable by the initial Purchaser, the Seller, and the Servicer, and the respective successors and assigns of the initial Purchaser, the Seller, and the Servicer.  The initial Purchaser and any subsequent Purchasers may assign this Agreement to any Person to whom any Mortgage Loan is transferred pursuant to a sale or financing upon prior written notice to the Servicer and Master Servicer in accordance with the following paragraph.   As used herein, the trust formed in connection with a Securitization Transaction shall be deemed to constitute a single "Person." Upon any such assignment and written notice thereof to the Servicer, the Person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans and this Agreement, to the extent of the related Mortgage Loan or Loans, shall be deemed to be a separate and distinct Agreement between the Servicer, and such Purchaser, and a separate and distinct Agreement between the Servicer, and each other Purchaser to the extent of the other related Mortgage Loan or Loans.

At least five (5) Business Days prior to the end of the month preceding the date upon which the first remittance is to be made to an assignee of the Purchaser or the Master Servicer, the Purchaser shall provide to the Servicer written notice of any assignment setting forth:  (a) the Servicer's applicable Mortgage Loan identifying number for each of the Mortgage Loans affected by such assignment; (b) the aggregate scheduled transfer balance of such Mortgage Loans; and (c) the full name, address and wiring instructions of the assignee and the name and telephone number of an individual representative for such assignee, to whom the Servicer should:  (i) send remittances; (ii) send any notices required by or provided for in this Agreement; and (iii) deliver any legal documents relating to the Mortgage Loans (including, but not limited to, contents of any Mortgage File obtained after the effective date of any assignment).

If the Purchaser has not provided the notice of assignment required by this Section 28, the Servicer shall not be required to treat any other Person as a "Purchaser" hereunder and may continue to treat the Purchaser which purports to assign the Agreement as the "Purchaser" for all purposes of this Agreement.

SECTION 29. <u>Non-Solicitation</u>.

From and after the Closing Date, each of the Seller, the Servicer and any of their respective affiliates hereby agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on its behalf, to personally, by telephone or mail, solicit a Mortgagor under any Mortgage Loan for the purpose of refinancing a Mortgage Loan, in whole or in part, without the prior written consent of Purchaser or its designee.  It is understood and agreed that all rights and benefits relating to the solicitation of any Mortgagors and the attendant rights, title and interest in and to the list of such Mortgagors and data relating to their Mortgages (including insurance renewal dates) shall be transferred to Purchaser pursuant hereto on the related Closing Date and none of the Seller, the Servicer or any of their respective affiliates shall take any action to undermine these rights and benefits.

USActive

Notwithstanding the foregoing, it is understood and agreed that the Seller, the Servicer or any of their respective affiliates:

(a) may provide pay-off information and otherwise cooperate with individual mortgagors who contact it about prepaying their mortgages by advising them of refinancing terms and streamlined origination arrangements that are available; and

(b) may offer to refinance a Mortgage Loan made within 30 days following receipt by it of a pay-off request from the related Mortgagor.  Promotions undertaken by the Seller or the Servicer or by any affiliate of the Seller or the Servicer which are directed to the general public at large (including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements), shall not constitute solicitation under this Section 29.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

USActive ████

IN WITNESS WHEREOF, the Purchaser, the Seller and the Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized on the date first above written.

J.P. MORGAN MORTGAGE ACQUISITION
CORP., as Purchaser

By: _____
   Name: _____Brian L. Simons_____
   Title: _____Vice President_____

FIRST NATIONAL BANK OF NEVADA,
as Seller

By: _____
   Name: _____
   Title: _____

USActive ▮▮▮▮

IN WITNESS WHEREOF, the Purchaser, the Seller and the Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized on the date first above written.

J.P. MORGAN MORTGAGE ACQUISITION
CORP., as Purchaser

By:_____
    Name: _____
    Title: _____

FIRST NATIONAL BANK OF NEVADA,
   as Seller

By:_____
    Name:   Scott L. Groves
    Title:   SVP Secondary Marketing

USActive ▬

PAGE 1/1 * RCVD AT 6/19/2007 7:59:37 AM [US Mountain Standard Time] * SVR:OPSRFX01/2 * DNIS:8425 * CSID:▬ * DURATION (mm-ss):00-32

TOTAL P.01

**EXHIBIT 1**

FORM OF SELLER'S OFFICER'S CERTIFICATE

I, [____], hereby certify that I am a duly elected [___] of [_____] a [national trust and savings association] [federal savings bank] [national banking association] (the "Seller"), and further certify, on behalf of the Seller as follows:

1.   Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of the Seller as are in full force and effect on the date hereof.  No event has occurred which has affected the good standing of the Seller under the laws of the United States.

2.   No proceedings looking toward liquidation, dissolution or bankruptcy of the Seller or a merger pursuant to which the Seller would not be the surviving entity are pending or contemplated.

3.   Each person who, as an officer or attorney-in-fact of the Seller, signed (a) the Mortgage Loan Purchase Agreement (the "Purchase Agreement"), dated _____, by and between [the Seller] as seller and as servicer, and J.P. Morgan Mortgage Acquisition Corp., as purchaser, and (b) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Purchase Agreement was, at the respective times of such signing and delivery, and is, as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

4.   All of the representations and warranties of the Seller contained in Subsections 7.01 and 7.02 of the Purchase Agreement were true and correct in all material respects as of the Closing Date.

5.   The Seller has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the Closing Date pursuant to the Purchase Agreement.

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Purchase Agreement

IN WITNESS WHEREOF, I have hereunto signed my name on this ___ day of _____.

[_____]

By: _____

      Name: _____

      Title: _____

I, _____, a ____ of [_____], hereby certify that _____ is a duly elected, qualified and acting _____ of the [Seller] [Servicer] and that the signature appearing above is such person's genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name on this ___ day of _____.

[_____]

By: _____

      Name: _____

      Title: _____

**EXHIBIT 2**

MORTGAGE LOAN DOCUMENTS

With respect to each Mortgage Loan, the Mortgage Loan Documents shall consist of the following:

(a) the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee (the "Last Endorsee") by an authorized officer or, if the original Mortgage Note has been lost or destroyed, a lost note affidavit acceptable to the Purchaser in its sole discretion. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge, if state law so allows and the Custodian is so advised by the Seller that state law so allows. If the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Last Endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the endorsement must be by "[Last Endorsee], formerly known as [previous name]";

(b) the original of any guarantee executed in connection with the Mortgage Note;

(c) the original Mortgage with evidence of recording thereon. If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage;

(d) the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(e) except with respect to each MERS Designated Mortgage Loan, the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional

USActive ▮▮▮▮▮

mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in this Agreement.  If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser.  If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank. If the Mortgage Loan was acquired by the Seller in a merger, the Assignment of Mortgage must be made by "[Seller], successor by merger to [name of predecessor]".  If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment of Mortgage must be by "[Seller], formerly known as [previous name]";

(f) the originals of all intervening assignments of mortgage (if any) evidencing a complete chain of assignment from the Seller (or MERS with respect to each MERS Designated Mortgage Loan) to the Last Endorsee with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment;

(g) The original mortgagee policy of title insurance or, in the event such original title policy is unavailable, a certified true copy of the related policy binder or commitment for title certified to be true and complete by the title insurance company, in each case, including an Environmental Protection Agency Endorsement and an adjustable-rate endorsement;

(h) security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage;

(i) the original PMI Policy, LPMI Policy or certificate of insurance, where required pursuant to the Agreement;

(j) a copy of any applicable power of attorney; and

(k) With respect to a Co-op Loan: (i) a copy of the Co-op Lease and the assignment of such Co-op Lease to the originator of the Mortgage Loan, with all intervening assignments showing a complete chain of title and an assignment thereof by

Seller; (ii) the stock certificate together with an undated stock power relating to such stock certificate executed in blank; (iii) the recognition agreement in substantially the same form as standard a "AZTECH" form; (iv) copies of the financial statement filed by the originator as secured party and, if applicable, a filed UCC-3 Assignment of the subject security interest showing a complete chain of title, together with an executed UCC-3 Assignment of such security interest by the Seller in a form sufficient for filing.

USActive ███

**EXHIBIT 3**

CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, unless otherwise disclosed to the Purchaser on the data tape, which shall be available for inspection by the Purchaser and which shall be retained by the Servicer or delivered to the Purchaser:

(a) Copies of the Mortgage Loan Documents.

(b) Residential loan application.

(c) Mortgage Loan closing statement.

(d) Verification of employment and income, if required.

(e) Verification of acceptable evidence of source and amount of down payment.

(f) Credit report on Mortgagor, in a form acceptable to either Fannie Mae or Freddie Mac.

(g) Residential appraisal report.

(h) Photograph of the Mortgaged Property.

(i) Survey of the Mortgaged Property, unless a survey is not required by the title insurer.

(j) Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, home owner association declarations, etc.

(k) Copies of all required disclosure statements.

(l) If applicable, termite report, structural engineer's report, water potability and septic certification.

(m) Sales Contract, if applicable.

(n) The Primary Mortgage Insurance policy or certificate of insurance or electronic notation of the existence of such policy, where required pursuant to the Agreement.

(o) Evidence of electronic notation of the hazard insurance policy, and, if required by law, evidence of the flood insurance policy.

USActive ▮▮▮▮▮

## **EXHIBIT 4**

[RESERVED]

## **EXHIBIT 5**

[RESERVED]

**EXHIBIT 6**

FORM OF OPINION OF COUNSEL

J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue, 10th Floor
New York, New York 10017

Dear Sirs:

You have requested [our] [my] opinion, as [Assistant] General Counsel to [SELLER] (the "Company"), with respect to certain matters in connection with the sale by the Company of the Mortgage Loans pursuant to that certain Mortgage Loan Purchase Agreement (the "Agreement"), dated [DATE], is hereby executed by and between J.P. Morgan Mortgage Acquisition Corp., as purchaser (the "Purchaser") and the Company and an Interim Servicing Agreement, dated as of _____ (the "Servicing Agreement", together with the Purchase Agreement, the "Agreements") by and among the Company and the Purchaser.

[We] [I] have examined the following documents:

1.    the Agreements;

2.    the form of Assignment of Mortgage;

3.    the form of endorsement of the Mortgage Notes; and

4.    such other documents, records and papers as we have deemed necessary and relevant as a basis for this opinion.

To the extent [we] [I] have deemed necessary and proper, [we] [I] have relied upon the representations and warranties of the Company contained in the Agreements. [We] [I] have assumed the authenticity of all documents submitted to [us] [me] as originals, the genuineness of all signatures, the legal capacity of natural persons and the conformity to the originals of all documents.

USActive

Based upon the foregoing, it is [our] [my] opinion that:

1. The Company is a [type of entity] duly organized, validly existing and in good standing under the laws of the [United States] and is qualified to transact business in, and is in good standing under, the laws of [the state of incorporation].

2. The Company has the power to engage in the transactions contemplated by the Agreements and all requisite power, authority and legal right to execute and deliver the Agreements, and to perform and observe the terms and conditions of such Agreements

3. [Each of] the Agreements has been duly authorized, executed and delivered by the Company and is a legal, valid and binding agreement enforceable in accordance with its respective terms against the Company, subject to bankruptcy laws and other similar laws of general application affecting rights of creditors and subject to the application of the rules of equity, including those respecting the availability of specific performance, none of which will materially interfere with the realization of the benefits provided thereunder or with the Purchaser's ownership of the Mortgage Loans.

4. The Company has been duly authorized to allow any of its officers to execute any and all documents by original signature in order to complete the transactions contemplated by the Agreements.

5. Either (i) no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Company of or compliance by the Company with the Purchase Agreement, or the sale of the Mortgage Loans or the consummation of the transactions contemplated by the Agreements; or (ii) any required consent, approval, authorization or order has been obtained by the Company.

6. Neither the consummation of the transactions contemplated by, nor the fulfillment of the terms of, the Agreements conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under the charter or by-laws of the Company, the terms of any indenture or other agreement or instrument to which the Company is a party or by which it is bound or to which it is subject, or violates any statute or order, rule, regulations, writ, injunction or decree of any court, governmental authority or regulatory body to which the Company is subject or by which it is bound.

7. There is no action, suit, proceeding or investigation pending or, to the best of [our] [my] knowledge, threatened against the Company which, in [our] [my] judgment, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Company or in any material impairment of the right or ability of the Company to carry on its business substantially as now conducted or in any material liability on the part of the Company or which would draw into question

Ex. 6-2

the validity of the Agreements, or the Mortgage Loans or of any action taken or to be taken in connection with the transactions contemplated thereby, or which would be likely to impair materially the ability of the Company to perform under the terms of the Agreements.

8.    The sale of each Mortgage Note and Mortgage as and in the manner contemplated by the Agreements is sufficient to fully transfer to the Purchaser all right, title and interest of the Company thereto as noteholder and mortgagee.

9.    The Mortgages have been duly assigned and the Mortgage Notes have been duly endorsed as provided in the Agreements. The Assignments of Mortgage are in recordable form, except for the insertion of the name of the assignee, and upon the name of the assignee being inserted, are acceptable for recording under the laws of the state where each related Mortgaged Property is located. The endorsement of the Mortgage Notes, the delivery to the Purchaser, or its designee, of the Assignments of Mortgage, and the delivery of the original endorsed Mortgage Notes to the Purchaser, or its designee, are sufficient to permit the Purchaser to avail itself of all protection available under applicable law against the claims of any present or future creditors of the Company, and are sufficient to prevent any other sale, transfer, assignment, pledge or hypothecation of the Mortgages and the Mortgage Notes by the Company from being enforceable.

This opinion is given to you for your sole benefit, and no other person or entity is entitled to rely hereon except that the purchaser or purchasers to which you initially and directly resell the Mortgage Loans may rely on this opinion as if it were addressed to them as of its date.

Very truly yours,

_____

[Name]
[Assistant] General Counsel

Ex. 6-3

USActive

FORM

EXHIBIT 7

**ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT**

THIS ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT (this "Assignment"), dated as of [_____], 200[__], is entered into among J.P. Morgan Acceptance Corporation I, a Delaware corporation (the "Depositor"), [_____], as trustee (the "Trustee") of [_____] (the "Trust"), J.P. Morgan Mortgage Acquisition Corp. ("JPMorgan Acquisition") and [_____] ("[_____]") and [_____] (the "Master Servicer").

RECITALS

WHEREAS JPMorgan Acquisition and [____] have entered into a certain [_____], dated as of [_____], 200[__],pursuant to which JPMorgan Acquisition has acquired certain Mortgage Loans pursuant to the terms of the Agreement and [____] has agreed to service such Mortgage Loans;

WHEREAS the Depositor has agreed, on the terms and conditions contained herein, to purchase from JPMorgan Acquisition certain of the Mortgage Loans (the "Specified Mortgage Loans") which are subject to the provisions of the Agreement and are listed on the mortgage loan schedule attached as Exhibit I hereto (the "Specified Mortgage Loan Schedule"); and

WHEREAS the Trustee, on behalf of the Trust, has agreed, on the terms and conditions contained herein, to purchase from the Depositor the Specified Mortgage Loans;

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the parties agree as follows:

1.      Assignment and Assumption

(a)      On and as of the date hereof, JPMorgan Acquisition hereby sells, assigns and transfers to the Depositor all of its right, title and interest in the Specified Mortgage Loans and all rights and obligations related thereto as provided under the Agreement to the extent relating to the Specified Mortgage Loans, the Depositor hereby accepts such assignment from JPMorgan Acquisition (the "First Assignment and Assumption"), and [_____] hereby acknowledges the First Assignment and Assumption.

JPMorgan Acquisition specifically reserves and does not assign to the Depositor hereunder any and all right, title and interest in, to and under and all obligations of JPMorgan Acquisition with respect to any Mortgage Loans subject to the Agreement which are not the Specified Mortgage Loans.

(b)      On and as of the date hereof, immediately after giving effect to the First Assignment and Assumption, the Depositor hereby sells, assigns and transfers to the Trustee, on behalf of the Trust, all of its right, title and interest in the Specified Mortgage Loans and all rights and obligations related thereto as provided under the Agreement to the extent relating to the Specified Mortgage Loans, and the Trustee, on behalf of the Trust, hereby accepts such assignment from the Depositor (the "Second Assignment and Assumption"), and [_____] hereby acknowledges the Second Assignment and Assumption.

(c)      On and as of the date hereof, JPMorgan Acquisition represents and warrants to the Depositor and the Trustee that JPMorgan Acquisition has not taken any action that would serve to impair

USActive ████

or encumber the respective ownership interests of the Depositor and the Trustee in the Specified Mortgage Loans since the date of JPMorgan Acquisitions' acquisition of the Specified Mortgage Loans.

2.       Recognition of Trustee

(a)       From and after the date hereof, each of JPMorgan Acquisition and [_____] shall note the transfer of the Specified Mortgage Loans to the Trustee in their respective books and records and shall recognize the Trustee, on behalf of the Trust, as of the date hereof, as the owner of the Specified Mortgage Loans, and [_____] shall service the Specified Mortgage Loans for the benefit of the Trust pursuant to the Agreement, the terms of which are incorporated herein by reference. It is the intention of [_____], the Depositor, the Trustee and JPMorgan Acquisition that this Assignment shall be binding upon and inure to the benefit of the Depositor, the Trustee and JPMorgan Acquisition and their respective successors and assigns.

(b)       Without in any way limiting the foregoing, the parties confirm that this Assignment includes the rights relating to amendments under the Agreement. Accordingly, the right of JPMorgan Acquisition to consent to any amendment of the Agreement as set forth in Section [___] of the Agreement shall be exercisable, to the extent any such amendment affects the Specified Mortgage Loans or any of the rights or obligations under the Agreement with respect thereto (including, without limitation, the servicing of the Specified Mortgage Loans), by the Trustee as assignee of JPMorgan Acquisition.

3.       Representations and Warranties

(a)       The Depositor represents and warrants that it is a sophisticated investor able to evaluate the risks and merits of the transactions contemplated hereby, and that it has not relied in connection therewith upon any statements or representations of [_____] or JPMorgan Acquisition other than those contained in the Agreement or this Assignment.

(b)       Each of the parties hereto represents and warrants that it is duly and legally authorized to enter into this Assignment.

(c)       Each of the parties hereto represents and warrants that this Assignment has been duly authorized, executed and delivered by it and (assuming due authorization, execution and delivery thereof by each of the other parties hereto) constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

4.       [_____] hereby acknowledges that [Wells Fargo Bank, N.A.] has been appointed as the Master Servicer of the Specified Mortgage Loans pursuant to the pooling and servicing agreement dated as of the date hereof among the Depositor, the Master Servicer, the Securities Administrator and the Trustee   (the "Pooling and Servicing Agreement") for Mortgage Pass-Through Certificates, Series 200[__]-[__] and, therefore, has the right to enforce all obligations of [_____] under the Agreement. Such rights will include, without limitation, the right to terminate [_____] under the Agreement upon the occurrence of an event of default thereunder, the right to receive all remittances required to be made by [_____] under the Agreement, the right to receive all monthly reports and other data required to be delivered by [_____] under the Agreement, the right to examine the books and records of [_____] relating to the Mortgage Loans, indemnification rights and the right to exercise certain rights of consent and

5

approval relating to actions taken by JPMorgan Acquisition. [_____] shall make all distributions under the Agreement to the Master Servicer by wire transfer of immediately available funds to:

> [Wells Fargo Bank, N.A.
> ABA Number:  121-000-248
> Account Name:  SAS Clearing
> Account number:  ███████1416]
> For further credit to:  [_____],
>                        Distribution Account Number: [_____]

[_____] shall deliver all reports required to be delivered under the Agreement to the Master Servicer at the following address:

> [Wells Fargo Bank, N.A.
> 9062 Old Annapolis Road
> Columbia, Maryland 21045
> Attention: Client Manager – [_____]
> Telecopier: (410) 715-2380]

5.    Amendment to the Agreement

The parties to the Agreement hereby agree to amend the Agreement as follows:

[_____]

6.    Indemnification by Master Servicer

The Master Servicer shall indemnify and hold harmless [_____] and its affiliates, and in each case, its officers, directors and agents from and against any losses, damages, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach by the Master Servicer or any of its officers, directors, agents or affiliates of its obligations in connection with the preparation, filing and certification of any Form 10-K pursuant to the Pooling and Servicing Agreement or the negligence, bad faith or willful misconduct of the Master Servicer in connection therewith. In addition, the Master Servicer shall indemnify and hold harmless [_____] and its affiliates, and in each case, its officers, directors and agents from and against any losses, damages, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach by any Servicer (as defined in the Pooling and Servicing Agreement), other than [_____], of its obligations in connection with any back-up certification (or any other back-up documents) to any certification of any Form 10-K required to be provided by the Master Servicer, but solely to the extent the Master Servicer receives amounts from such Servicer in connection with any indemnification provided by such Servicer (in each case as defined in the Pooling and Servicing Agreement) to the Master Servicer.

7.    Certain Expenses

[_____] and JPMorgan Acquisition shall be responsible for their own expenses in connection with negotiating reconstitution documents, including, but not limited to, reconstituted servicing agreements and assignment, assumption and recognition agreements, and reviewing any applicable disclosure documents; provided, however, that JPMorgan Acquisition shall be responsible for any expenses incurred by [_____] for professional fees of [_____]'s external accountants. With respect to any disclosure document containing servicing information of [_____], JPMorgan Acquisition will directly engage

6

[_____] ("[_____]"), or any other accountants designated by [_____] for such purpose, to provide a comfort letter (which letter shall also include [_____] as an addressee) regarding such servicing information and will pay the related fee at the time of closing of the transaction directly to [_____] or to such other accountant, as applicable.

8. <u>Continuing Effect</u>

Except as contemplated hereby, the Agreement shall remain in full force and effect in accordance with its terms.

9. <u>Governing Law</u>

This Assignment and the rights and obligations hereunder shall be governed by and construed in accordance with the internal laws of the State of New York.

10. <u>Notices</u>

Any notices or other communications permitted or required under the Agreement to be made to the Depositor and the Trustee shall be made in accordance with the terms of the Agreement and shall be sent to the Depositor and Trustee as follows:

In the case of JPMorgan Acquisition:

> J.P. Morgan Mortgage Acquisition Corp.
> 270 Park Avenue, 10th Floor
> New York, New York 10017
> Attention: [_____}
> Telephone: [_____]
> Facsimile: [_____]

With a copy to:

> JPMorgan Chase & Co.
> 270 Park Avenue
> New York, New York 10017
> Attention: General Counsel's Office

In the case of the Depositor:

> J.P. Morgan Acceptance Corporation I
> 270 Park Avenue
> New York, New York 10017
> Attention: [_____]

In the case of the Trustee:

> [_____]
> [Address]
> Attention: [_____]

In the case of [_____]:

7

[_____]
[_____]
[_____]
Attention: [_____]

or to such other address as may hereafter be furnished by the Depositor and the Trustee to the parties in accordance with the provisions of the Agreement.

11.     Ratification

Except as modified and expressly amended by this Assignment, the Agreement is in all respects ratified and confirmed, and all terms, provisions and conditions thereof shall be and remain in full force and effect.

12.     Counterparts

This Assignment may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument.

13.     Definitions

Any capitalized term used but not defined in this Assignment has the same meaning as in the Agreement.

[SIGNATURE PAGE FOLLOWS]

8

USActive ▮▮▮▮

IN WITNESS WHEREOF, the parties hereto have executed this Assignment the day and year first above written.

J.P. MORGAN MORTGAGE ACQUISITION CORP.

By: _____
    Name:
    Title:

J.P. MORGAN ACCEPTANCE CORPORATION I

By: _____
    Name:
    Title:

[_____], as Trustee of
[_____]

By: _____
    Name:
    Title:

[_____], as Master Servicer

By: _____
Name:
Title:

[_____]

By: _____
    Name:
    Title:

USActive ▮▮▮▮

**EXHIBIT I**

**Mortgage Loan Schedule**

**[See Schedule A to Pooling and Servicing Agreement]**

EXHIBIT 8

**TRANSFER INSTRUCTIONS**

Ex. 8-1

USActive

**EXHIBIT 9**

ASSIGNMENT AND CONVEYANCE

On this __ day of _____, 200_, [Seller], as the Seller, under that certain Mortgage Loan Purchase Agreement, dated as of [_____] 200__ (the "<u>Agreement</u>") does hereby sell, transfer, assign, set over and convey to J.P. Morgan Mortgage Acquisition Corp., as Purchaser under the Agreement all rights, title and interest of the Seller in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, and the related Mortgage Files and all rights and obligations arising under the documents contained therein. Pursuant to Section 6 of the Agreement, the Seller has delivered to the Custodian the documents for each Mortgage Loan to be purchased as set forth in the Agreement. The ownership of each Mortgage Note, Mortgage, and the contents of each Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be delivered promptly by the Seller to the Purchaser.

The Seller confirms to the Purchaser that the representations and warranties set forth in Section 7.01 of the Agreement with respect to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, and the representations and warranties in Section 7.02 of the Agreement with respect to the Seller are true and correct as of the date hereof.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

[SELLER]
(Seller)

By:_____
Name:_____
Title:_____

Ex. 9-1

USActive ███████

Exhibit A

Mortgage Loan Schedule

USActive ▮▮▮▮

**EXHIBIT 10**

**<u>SERVICER ACKNOWLEDGMENT</u>**

As of [_____]

[Name]
[Address]

Re:        Letter Agreement in connection with the purchase by J.P. Morgan Mortgage Acquisition Corp. (the "Purchaser") and the sale by [_____] (the "Company") of mortgage loans pursuant to that certain Mortgage Loan Purchase Agreement (the "Agreement"), dated as of <u>[Date]</u>, by and between the Company and the <u>Purchaser</u>

Ladies and Gentlemen:

In connection with the above-referenced transaction, and in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Purchaser and the Company hereby agree as follows:

1.     Unless otherwise specified in this letter agreement, all capitalized terms herein shall have the meaning as provided in the Agreement.

2.     The Purchaser hereby requests, and the Company hereby acknowledges, that [SERVICER] shall be the "Successor Servicer" under the agreement.

3.     This letter may be executed in any number of counterparts each of which shall constitute one and the same instrument, and either party hereto may execute this letter by signing any such counterpart.

[the remainder of this page intentionally left blank]

4.  This letter shall be deemed in effect when a fully executed counterpart thereof is received by the Company in the State of New York and shall be deemed to have been made in the State of New York.  This letter shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York except to the extent preempted by Federal law.

Very truly yours,

J.P. MORGAN MORTGAGE ACQUISITION CORP.

By:

Name:_____

Title:_____

Accepted and Agreed:

[_____]

(Seller)

By:  _____

Name: _____

Title:  _____

Ex. 10-2

**EXHIBIT 11**

**CO-OP LOAN FILE**

The following items should be included with respect to any Co-op Loan:

(1)     The (i) original Mortgage Note, endorsed (on the Mortgage Note or an allonge attached thereto) "Pay to the order of _____, without recourse" and signed by facsimile signature in the name of the related Seller by an authorized officer, with all intervening endorsements showing a complete, valid and proper chain of title from the originator of such Mortgage Loan to the related Seller;

(2)     The original Assignment of Proprietary Lease for each Mortgage Loan, from the related Seller signed by original or by facsimile signature to _____, which assignment shall be in form and substance acceptable for recording (except for the recording information);

(3)     the original Stock Certificate and related Stock Power, in blank, executed by the Mortgagor with such signature guaranteed and original Stock Power, in blank executed by the related Seller;

(4)     the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the related Seller, then such Seller must execute an assignment of the Assignment of Proprietary Lease in blank;

(5)     the original Recognition Agreement and the original Assignment of Recognition Agreement;

(6)     the recorded state and county Financing Statements and changes thereto;

(7)     an Estoppel Letter and/or Consent;

(8)     the Co-op Lien Search;  and

(9)     the guaranty of the Mortgage Note and Co-op Loan, if any; and the original of any security agreement or similar document executed in connection with the Co-op Loan.

USActive ▮▮▮▮

EXHIBIT 12

FORM OF RECONSTITUTION AGREEMENT

This Reconstitution Agreement, dated [_____], 200[__] (this "Agreement"), is executed and delivered by [_____] (the "Company") in favor of JPMorgan Mortgage Acquisition Corp. ("JPMorgan Acquisition"), the Trustee, and JPMAC (each as defined below).

PRELIMINARY STATEMENT

WHEREAS, the Company and JPMorgan Acquisition are parties to a certain mortgage loan purchase agreement, by and between the Company and JPMorgan Acquisition, dated as of [____], 200[__], (the "Purchase Agreement"). Pursuant to the Purchase Agreement, the Company sold, JPMorgan Acquisition purchased certain adjustable-rate and fixed-rate mortgage loans, including the mortgage loans identified on the mortgage loan schedules annexed hereto as Annex A (the "Mortgage Loans").

WHEREAS, JPMorgan Acquisition has notified the Company that JPMorgan Acquisition intends to sell the Mortgage Loans to J.P. Morgan Acceptance Corporation I ("JPMAC") on [_____], 200[__] (the "Reconstitution Date"), pursuant to an assignment and assumption agreement (the "Assignment and Assumption Agreement"), among JPMorgan Acquisition, JPMAC, [_____], as trustee (the "Trustee") and [_____], as master servicer (the "Master Servicer"). JPMorgan Acquisition has also notified the Company that, on the Reconstitution Date, JPMAC intends to deposit the Mortgage Loans into a trust (the "Trust") pursuant to a pooling and servicing agreement, dated as of [_____], 200[__] (the "Pooling Agreement"), among JPMAC as depositor, (the "Depositor"), [_____], as master servicer (the "Master Servicer"), Wells Fargo Bank, N.A., as securities administrator (the "Securities Administrator") and [_____], as trustee (the "Trustee"). Capitalized terms used but not defined herein shall have the respective meanings assigned thereto in the [_____].

NOW, THEREFORE, in consideration of the mutual covenants made herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Delivery of Mortgage Files. The Company has delivered, in accordance with the terms of the Purchase Agreement, the Mortgage Loan Documents with respect to each Mortgage Loan to JPMorgan Acquisition, or its designee.

SECTION 2. Representations and Warranties of the Company. The Company hereby makes the representations and warranties contained in Sections 7.01 (other than the representations and warranties set forth in Sections 7.01(b), (c), (e), (g), (i), (j), (k), (w), (ii), (nn), (pp), (qq), (rr), (bbb), and (ggg), which are made as of the related Transfer Date) as of the related Closing Date and makes the representations and warranties contained in Section 7.02 of the Purchase Agreement as of the Reconstitution Date.

Ex. 11-1

USActive ███████

SECTION 3.   <u>Cure, Repurchase, and Other Obligations of the Company</u>.

(a)      All provisions of the Purchase Agreement shall continue in full force and effect. The provisions of the Purchase Agreement regarding the Company's obligations to cure or repurchase any Mortgage Loan as a result of a breach of a representation and warranty shall also apply to any breach of the respective representations and warranties made by the Company in Sections 7.01 and 7.02 of the Purchase Agreement.

(b)      With respect to the repurchase obligation referenced in Section 3(a) above, the "Repurchase Price" shall have meaning assigned to such term in the Purchase Agreement.

SECTION 4.   <u>Servicing</u>.   The Company will transfer on the Servicing Transfer Date or such other date as may be agreed upon between JPMorgan Acquisition and the Company, the servicing and administration of the Mortgage Loans in accordance with the instructions of JPMorgan Acquisition.

SECTION 5.   <u>Survival</u>.   The representations and warranties set forth in Sections 7.01 and 7.02 of the Purchase Agreement shall survive the transfer of the Mortgage Loans to JPMAC and from JPMAC to the Trust and shall continue in full force and effect, and notwithstanding subsequent termination of the Purchase Agreement or the Assignment and Assumption Agreement.   The representations, warranties and covenants contained herein shall not be impaired by any review or examination of the Mortgage Files or other documents evidencing or relating to the Mortgage Loans by JPMAC, its affiliates or agents or any failure on the part of JPMAC, its affiliates or agents to review or examine such documents.

SECTION 6.   <u>Trustee Rights</u>.   As an inducement to JPMAC and the Trust to purchase the Mortgage Loans, the Company acknowledges and consents to the transfer to JPMAC and from JPMAC to the Trust of all of JPMorgan Acquisition's rights against the Company pursuant to the Purchase Agreement insofar as such rights relate to the Mortgage Loans and to the enforcement or exercise of any right or remedy against the Company pursuant to the Mortgage Loan Purchase Agreement, including, without limitation, the remedies specified in Section 7.03 of the Purchase Agreement subject to Section 3 hereof.   Such enforcement of a right or remedy by the Trustee shall have the same force and effect as if the right or remedy had been enforced or exercised by JPMorgan Acquisition directly.

SECTION 7.   <u>Third-Party Rights</u>.   The Company, JPMorgan Acquisition and the Trustee each acknowledge and agree that the Master Servicer is an intended third-party beneficiary of this Agreement.

USActive ███████

IN WITNESS WHEREOF, the Company has caused this Reconstitution Agreement to be signed by its duly authorized officer as of the date first above written.

[_____]

By:_____
        Name:
        Title:

USActive ████

Acknowledged,

J.P. MORGAN ACCEPTANCE CORPORATION I

By:_____
    Name:
    Title:

J.P. MORGAN MORTGAGE ACQUISITION CORP.

By:_____
    Name:
    Title:

12-4

USActive ▮▮▮

**<u>Annex A</u>**

**Mortgage Loans**

**[On File]**

USActive ▮▮▮▮

EXHIBIT 13

LOAN PERFORMANCE INFORMATION

1.  Purchaser issued loan number
2. Original balance
3. Current Balance
4. Next Due Date
5. # days Delinquent
6. Servicing Status: foreclosure, bankruptcy, paid off

Ex. 13-1